# WHEELING.

## HAMILTON & Co. v. STEELE et als.

Submitted July 7, 1883—Decided November 3, 1883.

1. It is well settled, that where upon a purchase of land the conveyance of the legal title is taken in the name of one person, while the consideration is paid by another, the parties being strangers to each other, a resulting trust immediately arises from the transaction ; and the person named as grantee in the conveyance will be a trustee for the party from whom the consideration proceeded. But if the person, in whose name the conveyance is taken, is a near relative of the person who advances the purchase-money, the presumption is, that the consideration advanced was intended as a gift or advancement, and no resulting trust will arise in such case. The presumption, however, in either case is one of fact and not of law, and may be rebutted by evidence or circumstances. (p. 354.)

2. When a title-bond for land is executed by the vendor of land to the husband and the consideration is paid by the husband as the agent of his wife directly from the proceeds of the sale of

his wife's separate estate and from timber taken from the land, the husband having no estate or means of his own, and the circumstances showing that the purchase was made for the wife, and the deed is subsequently made by the vendor directly to the wife, such deed is not fraudulent as against the creditors of the husband and the land cannot be subjected to the payment of the debts of such creditors. (p. 355.)

The facts of the case are stated in the opinion of the Court.

*W. T. Thompson* and *H. C. McWhorter* for appellants.

*Simms & Enslow* for appellees.

SNYDER, JUDGE:

The plaintiffs, having recovered in the county court of Cabell county, on November 2, 1876, a judgment against S. E. Steele for six hundred dollars and costs, the amount of a note executed July 2, 1873, to B. D. McGinnis by said Steele and one Maggie E. Kerans, since deceased, for five hundred dollars payable fifteen months after date and endorsed to them by said McGinnis, they in February, 1877, brought this suit in the circuit court of said county to subject to the payment of said debt the personal estate of said Maggie E. Kerans, deceased, and also to subject to the satisfaction of said judgment a certain lot in the town of Guyandotte and a tract of one hundred and eighty-three acres of land in said county. The legal title to said lot being in one W. L. Steele, who never appeared and was not served with process, the suit was not prosecuted as to him or said lot; nor was any account taken of the estate of said Maggie E. Kerans or decree entered in regard thereto. The only matter litigated in the court below was the liability of said one hundred and eighty-three acres of land for the satisfaction of the plaintiffs' said judgment, and it is, therefore, unnecessary to refer to any other matters.

It appears that, on December 16, 1869, H. J. Samuels executed and delivered to said S. E. Steele his title-bond of that date for said one hundred and eighty-three acres of land stating therein that he had sold said land "for the sum of two thousand six hundred and fifty dollars, payable as follows: One thousand dollars due April 1, 1870, eight hun-

dred and seventy-five dollars due April 1, 1871, eight hundred and seventy-five dollars due April 1, 1872, all bearing interest from date, and notes executed for same. Now on full payment of said notes and interest, said Samuels binds himself to convey said land by general warranty deed to said Steele."

The purchase-money having been paid, the said Samuels and wife by deed dated April 4, 1876, conveyed said land to Mary L. Steele, the wife of said S. E. Steele, which deed was duly acknowledged and recorded in Cabell county on the day of its date.

The plaintiffs, in their bill, charge that the defendant S. E. Steele purchased and paid for said land 'and had it conveyed to his wife with intent to delay, hinder and defraud his creditors.

On the other hand the defendants, S. E. Steele and Mary L. Steele his wife in their answers explicitly and positively deny that any part of the purchase-money for said land was paid by said S. E. Steele, or that the said deed was made with intent to hinder, delay and defraud the creditors of said S. E. Steele; but that the said land was purchased by the said S. E. Steele for the said Mary L. Steele, and that the whole of the purchase-money therefor was paid by said Mary from her separate estate none of which was derived from her husband.

On September 4, 1878, the court entered a decree in the cause setting aside said deed as to the plaintiffs' judgment and costs and directing a sale of the land by a commissioner to pay said judgment and costs. From this decree the defendant Mary L. Steele appealed to this Court.

It is apparent that the only controversy in this case is one of fact as to whether the purchase-money for said land was paid by said S. E. Steele or by his wife, the appellant, Mary L. Steele, from her separate estate. The plaintiffs' judgment having been recovered more than six months *after* their deed from Samuels and wife to the appellant had been made and recorded, they acquired no lien on the land unless said deed was fraudulent and void. The title-bond to S. E. Steele, being a mere executory agreement did not prevent the said Samuels and wife from legally executing the deed

for the land described therein to the appellant if she was the real purchaser and paid for the land. And the said title-bond, having never been acknowledged or proved, though copied on the records of Cabell county, was not in law a recorded paper. But even if it had been duly recorded the land would not for that reason be made liable to the debts of said S. E. Steele against the rights of the true owner. Freem. on Judg., §§ 356, 357; *Snyder* v. *Martin*, 17 W. Va. 276, 299.

In regard to the testimony as to who paid the purchase-money for said land, H. J. Samuels, a witness on behalf of the plaintiffs, after stating that he had sold the land on the terms stated in the title-bond, that Steele had executed his notes to him for it and made payments of the purchase-money at different times, says : "At the time of the bargain with Mr. Steele, I had been acquainted with him some time. I knew he was an itinerant preacher. I had lost money by that sort of men. He informed me that his wife had an estate in Greene county, Pennsylvania, or near it, that she had inherited from some ancestor, and that if he could negotiate his wife's interest in that estate, probably he could pay off the purchase-money for the land, or notes for the purchase-money, and when he paid me some money I was under the impression, which I think I got from him, that he got the money from his wife's estate. When I made the deed to Mrs. Steele I was under the impression that her estate had paid for the land, or a considerable portion of it." And in reply to another question, the witness states : "I was under the general impression all through, that his wife was the capitalist of the concern. This impression I got from Mr. Steele from the start." And further, he states : "I know of no fraud from beginning to end."

D. B. McGinnis, the only other witness examined on behalf of the plaintiffs, states, that he is the payee and endorser of the note on which the judgment sought to be enforced in this suit is founded; that he took said note upon the responsibility of S. E. Steele, who at that time claimed the land as his and that he accepted said note upon the face of said property; that Steele told him he had bought the farm and was living on it, and that he never had any intimation of

its being for Mrs. Steele until the suit at law was brought on said note. On cross-examination witness says, at the time said note was given Mr. Steele informed him that Maggie E. Kerans, the principal in the note, had inherited from her father about one thousand seven hundred dollars, but that he did not accept the note upon the faith of this information, that he did suppose it would be paid out of Mrs. Kerans' funds, but did not make the contract relying upon that alone.

J. M. Welch, a witness on behalf of appellant, states, that about February 1, 1870, he loaned S. E. Steele five hundred dollars, with the understanding that it was borrowed to pay on land purchased in Cabell county; that Steele and his wife promised to pay the money and interest from the proceeds of the sale of a farm belonging to the heirs of John Lee, deceased, Mrs. Steele being one of said heirs and daughter of said Lee; and that he expects to be paid out of said interest of said estate.

David R. Steele, another witness for appellant, states that Mrs. Mary L. Steele is the daughter of John Lee, deceased, and that she inherited from her father's estate a one-third interest in a farm in Marshall county, West Virginia, which was sold for four thousand dollars; that he has been acting as her agent collecting and sending her money; that he has collected and sent her one thousand four hundred and eighty dollars; and that it was his understanding they had bought a farm in Cabell county and she wanted the money to pay for it. The witness states, that he resides in Washington county, Pennsylvania.

James E. Edens, another witness for appellant, after stating that he knew the land and showed it to Steele before he purchased it says: "He went on to tell me what his prospects were for paying for it—that his wife had an estate coming to her, worth probably one thousand six hundred dollars, or one thousand seven hundred dollars, that he could pay that upon it and make the balance out of the timber. I hauled timber off the land and sold it to W. O. Wright, and took notes for it, and turned over half of the papers to S. E. Steele, and the amount was between six hundred dollars and one thousand dollars as near as I can remember."

The only remaining witness was the appellant examined

on her own behalf.  She testified, that she and her husband were born and raised within three miles of each other, that he never had any means or money of his own to buy land with; that he is a minister of the gospel and his salary as such is sometimes enough to support his family and sometimes not; that when he is at home he does the leasing and managing of the farm and when he is absent she manages it in some way; that she first saw H. J. Samuels in the summer of 1869; that she was informed by her husband that Samuels had one hundred and eighty-three acres of land for sale; that she went and looked over it early in 1870, was pleased with it and concluded to purchase it and did so; that the first payment was eight hundred dollars, of which five hundred dollars was borrowed from her brother-in-law J. M. Welch with the understanding that the same was to be repaid him out of her interest in her deceased father's home place when sold, and three hundred dollars was borrowed of John S. Witcher; that afterwards she borrowed money from Wesley Hirchman and paid off said Witcher; that there was sold off the land about one thousand eight hundred dollars worth of timber, about one thousand dollars of which was paid to Samuels on said purchase through James E. Edens, and that near about one thousand dollars of the money from her father's estate was paid on said purchase over and above the other sums mentioned; that she is the daughter of John Lee, deceased, late of Marshall county; that she inherited from her father one third of his home place in Marshall which third she sold to Marshall and Clayton for about one thousand six hundred dollars in 1870; that her husband acted as her agent and made the purchase of the land from Samuels for her and as such received the money and paid it over to Samuels; that he borrowed the money of Hirchman and gave his note for it and after Samuels made the deed to her it was thought best that she should also sign the note which she did; that she knew Edens but her husband made the contract for her with him to get the timber off the land after talking it over with her; that her interest in her father's estate was sold by her brother-in-law David R. Steele who acted as her agent and sent the one thousand dollars that was paid on the land, and there is six hundred still coming to

her from the sale of her interest in her father's estate; that Samuels told her that it was his understanding the land was purchased for her and paid for out of her means; that her husband never had any written power of attorney to act as her agent and she never paid him any salary or wages for so acting.

From this testimony, it seems to me there can be no question that Mrs. Steele, the appellant, not only paid all the purchase-money, but that the land was purchased by her husband for her, and that this fact was made known to Samuels the vendor at the time the purchase was made. Under these circumstances, if the deed instead of the title-bond had been made in the name of the husband, a deed subsequently made by him to his wife would be sustained in a court of equity. It is the settled law, that when upon a purchase of property the conveyance of the legal title is taken in the name of one person, while the consideration is paid by another, the parties being strangers to each other, a resulting trust immediately arises from the transaction; and the person named as grantee in the conveyance will be a trustee for the party from whom the consideration proceeded. *Bank* v. *Carrington*, 7 Leigh 566; *Nixon's Appeal*, 63 Pa. St. 279. And the law is equally well settled, that such resulting trust will not arise, when the party who advanced the purchase-money is a near relation to the party in whose name the deed is taken. If a father advances the purchase-money, for instance, and the deed is taken in the name of a wife or child—*Shaw* v. *Read*, 47 Pa. St. 96. In such cases the presumption is that the purchase-money was intended as a gift or advancement—*Ebrun* v. *Dancer*, 2 Ch. Cas. 26. But this presumption is one of fact and not of law, and may be rebutted by evidence or circumstances— *McGinnis* v. *Curry*, 13 W. Va. 56, 64–5.

In *McGinnis* v. *Curry*, this Court, upon the circumstances shown in that case, held, that the consideration had passed from the wife to the husband as a gift before the purchase of the land. Among other facts it was shown in that case, that the wife sold a farm, which was her separate property, received the purchase-money and handed a portion of it to her husband, who invested it in a farm in Missouri with the consent and approbation of his wife, and with her approval

took the deed therefor to himself, that the family resided upon this farm for two years, and the husband, then, with the knowledge of the wife, exchanged this farm for one in West Virginia, and the deed was made to the husband; that afterwards the husband sold a part of this farm and the family resided upon it for eighteen months; that during all this time the wife set up no claim to either the Missouri or the West Virginia farm or to the money invested in them; that the husband becoming involved conveyed the West Virginia farm to his son for the use of his wife without any consideration other than the money derived by the husband from the wife for the first farm sold by her, and it was held by this Court, that the presumption, arising out of these facts and the other circumstances in the case, was that the money with which these farms were purchased was a gift from the wife to the husband and there was no resulting trust to her in either purchase, and that, therefore, the conveyance of the West Virginia farm by him to his son for the use of his wife was fraudulent and void as to the creditors of the husband, the grantor.

It is apparent that that case was very different from the one before us. Here the land was purchased directly with money derived from the wife's estate and the deed made direct by the vendor to her. It does not appear that she even knew that the title-bond had been taken in the name of her husband, much less that she assented to or approved of its being so taken, and the deed was made to her by the vendor because he knew that she was the real purchaser and had furnished the means to pay for the land. The presumption, therefore, that the consideration paid for the land was intended as a gift by the wife to the husband was clearly rebutted by the facts and circumstances of the whole transaction. Even if the deed had been made to the husband a resulting trust would have arisen in her favor and a court of equity would have compelled a conveyance of the legal title from the husband to her, and her right to such conveyance would have been paramount to the claims of the creditors of her husband. *Churchill* v. *Morse*, 23 Ia. 229; *Ellis* v. *Turley*, 1 Paige Chy. 280; *Brown* v. *Pierce*, 7 Wall. 205.

Therefore, both upon the facts and the law, I am clearly

of opinion that the appellant was entitled to hold said land free from the claims of her husband's creditors, and that the decree of the circuit court of September 4, 1878, is erroneous and must be reversed with costs to the appellant against the appellees, the plaintiffs in the suit. And this cause is remanded to the said circuit court with instructions to that court to dismiss the suit as to said one hundred and eighty-three acres of land with such costs to the defendant, Mary L. Steele, against the plaintiffs as were incurred by her in defending her title to said land, and for further proceedings to be had there in the cause in relation to the other matters alleged in the bill as may in accordance with the rules and practice governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.