# CHARLESTOWN.

Robinson *v.* Neill.

Submitted June 9, 1890.—Decided September 12, 1890.

1. Married Woman—Separate Estate.

Where real estate is conveyed directly to a married woman by a vendor, the deed showing on its face that the consideration for said real estate is to be paid by said vendee in deferred payments, said vendee executing her notes to the vendor for said deferred payments, the first of which payments appears to have been made by said vendee out of the proceeds of ice gathered and put up on said land by the husband of vendee acting as her agent, neither said ice nor a horse nor other property purchased with the proceeds of said ice should be held liable to be levied upon and sold as the property of said husband for his debts.

2. MARRIED WOMAN—SEPARATE PROPERTY,

> If a levy is made on said ice, or property purchased with the proceeds arising from the sale thereof, said married woman may interplead, and such property will be held and considered as her separate property, and be released from such levy.

*J. A. Haggerty* and *U. N. Arnett Jr.* for plaintiff in error cited :

39 Am. Rep. 674, 676, 677 ; 31 Am. Rep. 437 ; 47 Wis. 113 ; 18 W. Va. 75, 94 *et seq ;* 24 Ia. 289 ; 42 Wis. 532 ; Stew. Hus. & W. §§ 223, 224 ; 22 Mich. 255 ; Code c. 66, s. 3 ; 13 W. Va. 572 ; 110 U. S. 296, 301 ; 21 How. 391, 393.

*H. G. Linn* and *W. S. Meredith* for defendants in error cited :

11 W. Va. 113 ; 13 W. Va. 160 ; 25 W. Va. 108 ; 26 W. Va. 49 ; Id. 710 ; 24 W. Va. 401 ; 26 W. Va. 341 ; Bart. L. Pr. 20 ; 31 W. Va. 94 ; Bump. Fraud. Conv. 269 ; 49 Ind. 393 ; 22 W. Va. 673 ; 23 W. Va. 499.

ENGLISH, JUDGE :

This was a proceeding instituted on the 20th day of April, 1889, before a justice of the peace of Marion county, under Code W. Va., c. 50, s. 151, by Maria E. Robinson against Neill & Ellingham and C. L. Robinson to try the right to certain property described as a certain brown horse, one cider-mill, one trunk and a lot of ice in the ice-house, which had been levied upon to satisfy an execution in favor of said Neill & Ellingham against C. L. Robinson upon a judgment, which had been rendered in favor of said Neill & Ellingham against said C. L. Robinson. On the 9th day of May, 1889, the justice, after hearing the evidence, held that said brown horse, cider-mill and lot of ice in the ice-house on the land of said Maria E. Robinson was the separate property of the petitioner, Maria E. Robinson, and was not liable for the debts of her husband, and ordered that said property be released from levy, and that the said Maria E. Robinson have and hold the said property free from the payment of the debts of C. L. Robinson, her husband, levied on as set forth in her notice to Neill & Ellingham and C. L. Robinson.

From this judgment the said Neill & Ellingham applied

for· and obtained an appeal to the Circuit Court of said county, and on the 5th day of December, 1889, said appeal was heard and determined by the court in lieu of a jury, and resulted in a reversal of the judgment of said justice; and the appellee, having excepted to various rulings of said Circuit Court upon the trial of said appeal, applied for and obtained an appeal to this Court from the judgment aforesaid.

The following facts appear to have been proven on the trial of said appeal, as is shown by the bill of exceptions taken upon the trial, towit: That the said Maria E. Robinson was the wife of C. L. Robinson; that, at the time said judgment was rendered in favor of Neill & Ellingham against said C. L. Robinson, she was living with her said husband, in the town of Palatine, Marion county, W. Va., and was still living with him; that she was married to him about six years previous to the date of said judgment, and that on the 27th day of December, 1887, her father, Peter T. Barnes, conveyed to her five lots of land situated in South Palatine, described in a deed of that date, in consideration of the sum of one thousand dollars, to be paid for in five equal annual installments, with interest from date; that she executed her notes to said Peter T. Barnes for said consideration, which notes were afterwards sold by said Barnes to the Farmers' Bank of Fairmont, and that said bank still holds all of said notes except the first one, which was paid from money obtained from the sale of ice put up in the winter of 1887 and 1888 on said land; that her father made and delivered to her his note for the sum of ninety five dollars; that forty dollars of said note was a gift and the residue thereof was for service which had been rendered to said Peter T. Barnes by her during an attack of typhoid fever at said C. L. Robinson's house in the winter of 1888–89; that at the time of the conveyance of said real estate to said Maria E. Robinson at the time said ice levied on and claimed by her was put up by her husband as her agent on said real estate, and at the time said cider-mill and horse were purchased by her, the said claimant had no separate estate except a few articles about the house which she still has; that said horse was purchased with ninety

dollars in money borrowed from Thomas H. Barnes; that said C. L. Robinson executed and signed her name to a note therefor as her agent payable to said Barnes, and also deposited with the said Barnes the said note for ninety five dollars which she had received from her said father as collateral security for the said ninety dollars loaned to her by the said Thomas H. Barnes, and that she still owed the said ninety dollars borrowed to pay for said horse; that said cider-mill was purchased by her husband as her agent with money derived from the sale of said ice gathered by her said husband in the winter of 1887 and 1888; that there had been paid on said real estate on the 27th day of December the sum of two hundred dollars, all of which was paid from money obtained from the sale of said ice put up in the winter of 1887 and 1888, as aforesaid; that said horse was bought from F. M. Meredith for ninety dollars; that fifty dollars thereof was paid by the said Thomas H. Barnes to the said C. L. Robinson as her agent, and, at her instance, was paid to the said F. M. Meredith on said horse, and the residue of forty dollars was paid directly by said Thomas H. Barnes to the said F. M. Meredith; that, at the time of the purchase of the said horse and the payment of the fifty dollars thereon, the said C. L. Robinson executed to said Meredith her note, and signed her name, as agent, for the remaining forty dollars; that her husband, C. L. Robinson, contributed his time and labor in putting up said ice, and making sale of the same, and in collecting the money therefor, and managed all of said business, and she did not contribute anything towards defraying the expenses of said business, but that said C. L. Robinson acted as her agent in all of said transactions; that said judgment of Neill & Ellingham was obtained on the 6th day of December, 1886, and on the 9th day of April, 1889, execution was issued thereon, and levied upon the property claimed by her as aforesaid, together with some other property; that a portion of the property so levied upon was sold as the property of her said husband, and another portion thereof was released as the property of the claimant, which was a trunk of clothing.

These being all the facts proven, the said Maria E.

Robinson moved the court to set aside said judgment as contrary to the law and the evidence, which motion the court overruled, to which judgment and ruling of the court in refusing to set aside said judgment and grant her a new trial the said Maria E. Robinson excepted.

The first question raised by the defendants in error and relied upon by them to obtain a dismissal of this writ of error is the want of jurisdiction in this Court to hear and determine the same, because it does not appear that the matter in controversy, exclusive of costs, exceeds the value or amount of one hundred dollars, and there is no other matter involved that would confer jurisdiction. Now it must be remembered that this was a controversy to try the right of property levied upon under execution. In the case of *Whiteside* v. *Haselton*, 110 U. S. 296 (4 Sup. Ct. Rep. 1), in which the relief sought was a partition of real estate, and a motion was made to dismiss the case on the ground that the amount in controversy did not exceed five thousand dollars, there being no distinct statement anywhere in the record of the value of the property, and the parties were permitted to file affidavits as to the value of the property; and, it thus appearing that the matter in controversy exceeded five thousand dollars, the court held that the jurisdiction was sufficiently established, and proceeded with the case.

In the case under consideration, the plaintiff in error has thought proper to present affidavits as to the value of the property in controversy, with her petition; but, in my view of the case the necessity for such a course does not arise in this case, for the reason that the value of the property sufficiently and affirmatively appears, from the facts certified as proved upon the trial, to show that the matter in controversy exceeded one hundred dollars in value, and said matters are continued by the writ of error. These facts show that in 1888 the horse levied upon was purchased for ninety dollars; that about the same time the cider-mill was purchased for eighteen dollars, and, when the ice levied upon was directed to be sold, the said Maria E. Robinson was required to give bond in the penalty of two hundred dollars, which she did in order to

prevent the sale. These facts make it sufficiently apparent that the value of the property in controversy exceeded one hundred dollars, and render it unnecessary for us at this time to express an opinion as to the practice in this State of filing affidavits in support of jurisdiction, where the question is raised by motion to dismiss on the ground that the value of the property in controversy is insufficient.

The counsel for defendants in error contend, that, "because it appears among the facts proven on said trial that at the time said ice was put up, and said cider-mill and said horse were purchased, the said Maria E. Robinson had no separate estate except a few articles about the house, which she still has," the case is thereby settled. The facts proven on the trial must, however, be weighed and considered together; and, when this is done, it will be found, that the claimant of said property never pretended to have any personal property, with the exception of the note for ninety five dollars, which was executed to her by her father, and which she deposited as collateral security, when she borrowed the ninety dollars from Thomas H. Barnes to pay for said horse, and said ninety dollars still remains unpaid. As to the real estate conveyed to her on the 27th day of December, 1887, by Peter T. Barnes, it appears, that said purchase was made, as shown by the face of the deed, on one, two, three, four and five years' time, and the payments were to be made annually, each amounting to two hundred dollars, with interest, the first of which had been met and discharged by her. This fact being proven, she was surely entitled to the products of any character derived from said land. It appears that she had an ice-house, and that she employed her husband as her agent, at the proper season, in gathering and storing ice on said land; and with this ice she made the cash payment on her land, and also paid for the cider-mill.

In reviewing these facts, I can perceive nothing inconsistent with the rights of a married woman with reference to her separate estate, although she was living with her husband. By our statute, "any married woman may take by inheritance, or by gift, grant, devise or bequest from any person other than her husband, and hold to her sole

and separate use, and convey and devise, real and personal property and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with like effect as if she were unmarried; and the same shall not be subject to the disposal of her husband, nor be liable for his debts." And this Court has held in the case of *Miller* v. *Peck*, 18 W. Va. 75, that "a married woman having personal property which she is allowed to hold by statute as her separate property may barter and trade with reference thereto through her husband as her agent, and will be entitled to the increase thereof, though living with her husband;" also that "such a married woman may in her own name proceed, under the statute of interpleader, to assert her right to such property, and that although her husband may have given his own labor in such barter and trade, and may have used the labor of his horse therein, in the absence of the fraud of the wife, this does not change the character of the property, and the property is not liable for the debts of the husband."

It is contended by counsel for the defendants that it does not appear, that the land, from which the ice was gathered, belonged to the plaintiff in error or was her separate estate and the cases of *McMasters* v. *Edgar*, 22 W. Va. 673, and *Stockdale* v. *Harris*, 23 W. Va. 499, are cited for the purpose of showing, that, where a wife purchases land, the burden of proof is upon her to show that she paid for the land with funds not furnished by the husband, and that in the absence of proof the presumption is, that the husband furnished the means of payment.

In the case under consideration, however, the deed from Peter T. Barnes to the plaintiff in error was offered in evidence, and it appears upon the face of the deed, that the same contained covenants of general warranty, that time was given for the payment of the entire purchase-money in annual instalments bearing interest, and a lien was reserved to secure the payment of the purchase-money; that the plaintiff in error executed her notes to the vendor for the purchase-money, which notes were sold by said vendor to the Farmer's Bank of Fairmont, which bank still holds said notes except the first one, which was paid with the

proceeds of the sale of the ice gathered by her husband on said real estate and put up in the winter of 1887 and 1888.

It further appears from the facts proved, that her said husband acted as her agent in putting up said ice and in selling the same, and in collecting the money therefor; and, although it was proved, that she did not contribute anything towards defraying the expenses of said business, it would be only reasonable to infer, that said expenses were paid out of the money collected by him for said ice. Not only is it true that the evidence shows, that the land was conveyed to her by the grantor, and under our statute it must be regarded as her separate estate, but the notes executed for the purchase-money were executed by her, and were not even endorsed by her husband; and, so far as the purchase-money has been paid, it has been paid from the proceeds of ice gathered on said land. She would surely have had a perfect right to pay said purchase-money from timber cut on said land or from crops raised thereon; and there can be no good reason why she could not pay the purchase-money with ice gathered thereon, although gathered by her husband as her agent.

In the case of *Hamilton* v. *Steele*, 22 W. Va. 348, this Court held that "when a title-bond for land is executed by the vendor thereof to the husband, and the consideration is paid by the husband, as the agent of his wife, directly from the proceeds of the sale of the wife's separate estate, and from timber taken from the land, the husband having no estate or means of his own, and the circumstances showing that the purchase was made for the wife, and the deed is subsequently made by the vendor directly to the wife, such deed is not fraudulent against the creditors of the husband, and the land can not be subjected to the payment of the debts of such creditors."

In the case at bar, however, the contract was not made with the husband, but directly with the wife. The deed was made directly to her, and the husband in no manner became responsible for the purchase-money. Certainly, then, the real estate or its products should in no manner be liable for the indebtedness of said husband. There can be no question as to the brown horse which was levied on under said

execution being the separate property of the plaintiff in error, and in no way liable under said execution, as it clearly appears that said horse was purchased with money borrowed by the plaintiff in error from Thomas H. Barnes, by depositing the note for ninety five dollars executed to her by her father as collateral security therefor; and under the rulings of this Court in the case of *Hamilton* v. *Steele, supra,* there can be no doubt that the cider-mill and ice levied on, as aforesaid, were the separate property of the said Maria E. Robinson, and were not liable for the debts of her said husband.

The judgment of the Circuit Court of Marion county must be reversed; and, this Court proceeding to enter such judgment as said Circuit Court should have entered, it is ordered that the judgment of the justice be and the same is hereby affirmed, and the defendants in error must pay the costs of this writ of error, as well as the costs in the court below.

BRANNON, JUDGE, concurred.

SNYDER, PRESIDENT, (*dissenting.*)

It seems to me, that this whole action is a mere subterfuge, by which a married woman without any estate whatever, through the agency of her husband and by his fraud, has been invested with property acquired by his labor and service, and is attempting to exempt the same from the creditors of her husband upon no other ground than that she appointed him her agent. I therefore dissent from the foregoing opinion.

LUCAS, JUDGE:

I concur in the conclusions reached by the opinion above, as decided by Judge ENGLISH, upon the further ground that a grant of real estate by a father to his own daughter by a deed, which gives her long and easy terms of payment, and on which no cash payment is made, and a lien reserved for the purchase-money, can not properly be said to be a purchase by her husband, and that the circumstances relieve her from the presumption that her husband is to furnish

the funds to pay for the land. I think that the father has a right to make such a contract with his own daughter, and that, if she can pay for the land out of the ice-crop, or other crops gathered on the same, neither the land itself nor such crops nor any personalty she may acquire from the proceeds thereof ought generally to be liable for judgments obtained against her husband. I think the case is ruled by *Miller* v. *Peck,* 18 W. Va. 75, and *Hamilton* v. *Steele,* 22 W. Va. 348, rather than by *McMaster* v. *Edgar, Id.* 673, and *Stockdale* v. *Harris,* 23 W. Va. 499.

REVERSED.