# CHARLESTON.

STEWART *v.* STOUT *et al.*

(DENT, JUDGE, absent).

Submitted June 12, 1893.—Decided November 11, 1893.

1. MARRIED WOMEN—SEPARATE ESTATE.

Where a conveyance of real estate is made to a married woman by a person other than her husband, and the purchase-money therefor is paid by the wife partly out of money earned by her by keeping a boarding house with the consent of her husband, he taking no part in said business and furnishing none of the means to carry it on, partly by money realized by her by releasing a contract which she had made with another party, and partly with money borrowed on her own individual note, she is entitled under the statute to hold the same to her sole and separate use, free from the disposal of her husband, and not liable for his debts.

2. MARRIED WOMEN—SEPARATE ESTATE.

Property purchased by a married woman from a person other than her husband is her separate property, although purchased

on credit, and paid for out of profits arising from its use by her, although when purchased by her she had no separate estate.

DENT & DENT, for appellant.

JOHN W. MASON, for appellees.

ENGLISH, PRESIDENT:

This was a suit in equity brought by Allen Stewart, assignee of Robert Shaw, against James H. Stout and Martha A. Stout, his wife, William M. Gould, trustee, E. W. Koelz, trustee, Robert Shaw, and Grafton Lodge, No. 31, Independent Order of Odd Fellows, of Grafton, W. Va., in the Circuit Court of Taylor county, to enforce an alleged judgment-lien against a certain house and lot situated in the city of Grafton, in said county, which judgment was for five hundred and forty dollars and twenty five cents, and sixteen dollars and five cents costs, with interest from the 7th day of August 1884, the day on which said judgment was obtained.

The bill among other things alleges that, on the 22d day of March, 1886, the defendant, James H. Stout, purchased from John T. McGraw a valuable house and lot situated in Grafton, in said county and state, and made valuable improvements thereon, all of which said Stout paid for out of his own personal estate, but that for the purpose of hindering and defrauding the plaintiff, and to prevent the collection of the judgment aforesaid, the said defendant James H. Stout procured said John T. McGraw to convey said property to his wife, the defendant Martha A. Stout, who had no estate to purchase said property with, save and except that derived from her said husband; and that afterwards the said Martha A. Stout and James H. Stout, her husband, conveyed said property to William M. Gould, trustee, in trust to secure to E. W. Koelz, trustee for Grafton Lodge, No. 31, Independent Order of Odd Fellows, of Grafton, W. Va., a certain note executed by said defendant Martha A. Stout for the sum of six hundred dollars, payable one year after date to said E. W. Koelz, as trustee as aforesaid; and plaintiff further alleges, that said note had long since been paid off and discharged, and the complainant prayed

that said deed from John T. McGraw to said Martha A. Stout be held fraudulent as to said complainant's debt, and that said deed of trust to William M. Gould, trustee, if there should remain anything due thereon, be postponed until the payment of plaintiff's debt, and that the house and lot aforesaid be sold, and the proceeds applied to the payment of the plaintiff's debt, interest and costs.

The defendants Martha A. Stout, James H. Stout, and E. William Koelz filed their separate answers to complainant's bill, putting in issue every material allegation thereof. Several depositions were taken in the cause, and on the 13th day of April, 1891, said cause was heard, and a decree rendered dismissing the plaintiff's bill with costs; and from this decree the plaintiff obtained this appeal.

The facts in regard to the purchase of the house and lot in controversy in this cause, as disclosed by the evidence found in the record, are as follows: The defendant Martha A. Stout, wife of James A. Stout, was desirous of purchasing and owning a certain house and lot in the town of Grafton, and an ice house in South Grafton, which property was owned by one John T. Whitescarver. This property was purchased by John W. Mason from said Whitescarver, and at the time he purchased said property, for the sum of four hundred and twenty dollars and certain back taxes and attorney's fees, it was understood that he was to sell the property to Mrs. Stout for the same price he paid for it; and in pursuance of this understanding, on the 29th day of January, 1880, said Mason entered into a contract in writing with said Martha A. Stout, by which she was to pay him four hundred and twenty dollars for said house and lot and ice-house, and Mr. Stout had nothing to do with this contract. Said Mason afterwards sold said ice-house for Mrs. Stout for forty dollars. He also rented the house and lot for Mrs. Stout, and paid the taxes, insurance and repairs, and was to account to her for any excess there might be over and above the interest on the purchase-money. At the end of several years, this property, under the charge of said J. W. Mason, had rented for more than enough to pay the interest, taxes, insurance and repairs, when he proposed to said Martha A. Stout to give her one hundred and fifty

dollars to release said contract, which she agreed to do, and which one hundred and fifty dollars was paid by said Mason to John T. McGraw, as a part payment of the purchase-money of the property sought to be subjected in said suit. The residue of the purchase-money for said property was raised as follows : On the 23d day of March, 1886, Martha A. Stout borrowed from Grafton Lodge, No. 31, Independent Order of Odd Fellows, six hundred dollars and executed her note for that amount, payable to E. W. Koelz, trustee of said lodge, with interest from that date payable quarterly. The money borrowed upon this note was paid to said John T. McGraw in the shape of a check signed by George Brinkham for said lodge of Odd Fellows, to be applied, as it was applied, as a part of the purchase-money on the lot of land in controversey; and one hundred dollars in cash, as John T. McGraw states in his deposition, was handed to him on said purchase-money at the same time said check was given him, making the sum of eight hundred and fifty dollars, the entire amount thereof.

Mrs. Martha A. Stout, in her deposition, when asked to state whose money and from what source derived was the one hundred dollars paid to John T. McGraw on account of the purchase of this property, answered, "It was mine, my money, that I had taken in when I kept boarding house," and that no part of said fund was derived from her husband. It also appears in the testimony taken in the cause that said Martha A. Stout engaged in the business of keeping a boarding house, out of which said one hundred dollars was realized, with the consent of her husband, James H. Stout. As to the house in which she kept boarders, it is apparent from the testimony of J. H. Stout that she lived in a Mr. Cole's house and boarded his family, and afterwards she moved into Doonan's house, and kept boarders there for four or five years; and Martha A. Stout says in her deposition that her husband paid his board to her like any other boarder, showing that he was not interested in the boarding business. It is clearly established by proof that she alone carried on the boarding business, and did so exclusively upon her credit, paying for provisions and supplies with which it was conducted. The very house

in which she first carried on the business was one rented of a Mr. Cole by her—a leasehold, separate estate. It, if not expressly stated, is a fair, if not irresistible, inference, from the facts established, and the tenor of the evidence in other respects, that she paid the rent by boarding Cole and family.

Our statute (section 3, c. 66 of the Code) provides that "any married woman may take by inheritance or by gift, grant, devise or bequest from any person other than her husband, and hold to her sole and separate use, and convey and devise real and personal property and any interest or estate therein, and the rents, issues, and profits thereof, in the same manner and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband, nor be liable for his debts."

The property in controversy was conveyed to the defendant, Martha A. Stout, not by her husband but by John T. McGraw; and unless the consideration was furnished by her husband, and said conveyance was made to her with intent to hinder, delay and defraud the creditors of her husband, the same must be regarded as her separate estate, and not liable for his debts.

The proof is clear and uncontradicted in any manner that six hundred dollars of the purchase-money which was paid for this property was borrowed from the Odd Fellows on the individual note of said Martha A. Stout. This money, so far as appears from the evidence, was raised on her credit, and said note, with the exception of the interest to April 19, 1890, yet remains unpaid.

This Court, in the case of *Trapnell* v. *Conklyn*, 37 W. Va. 242 (16 S. E. Rep. 570) has held that property purchased by a married woman from a person other than her husband is her separate property, although purchased on credit and paid for out of profits arising from its use by her, and although, when purchased by her, she had no separate estate.

As to one hundred and fifty dollars of the purchase-money the evidence shows that it was realized by said Martha A. Stout as the result of a contract made by her individually with John W. Mason, in regard to another piece of real estate, said Mason having paid her that amount to release

or rescind the contract; and the remaining one hundred dollars were realized by her by keeping a boarding house, and paid as a part of said purchase-money. There is nothing in the evidence taken in this cause that tends to show that the credit of the defendant Martha A. Stout was in any manner aided or increased by her husband, or that he in any manner furnished any portion of the six hundred dollars or the one hundred and fifty dollars paid by her on the purchase-money of said property. Had he any claim to the one hundred dollars realized by her from keeping a boarding house? The facts disclosed by the testimony show that she engaged in the business of keeping boarders with the consent of her husband; that he contributed nothing to her support, but paid his board to her like the rest; and the testimony of the merchant and butcher, with whom she dealt, shows the supplies necessary for the business were charged to her individually, and paid for by her.

In the case of *Penn* v. *Whitehead*, 17 Gratt. 503, the court of appeals of Virginia held that a married woman might engage in trade on her separate account, and enter into partnership for that purpose with the consent of her husband, and that she would be entitled to the profits of the trade against her husband, even though his agreement be merely voluntary; also, that a married woman, having a separate estate, may engage in trade with the consent of her husband, and may, to the extent of her power over it, subject her estate to the payment of the debts, and she will be entitled to the profits of the trade, as against her husband and his creditors, to the extent, at least, to which such profits may not be due to the labor, skill, capital, or credit furnished by her husband. See 2 Roper, Husb. & W. pp. 167–175, c. 18, § 4.

So far as the evidence discloses, it appears that this boarding-house was conducted and the necessary supplies purchased on credit, and that credit was furnished to Martha A. Stout, unaided in any manner by her husband; and, when the day of payment came, the bills were paid by her. The money to pay these bills, no doubt, was derived from the profits arising from keeping this boarding house, and the surplus she states was hers, and from these profits she paid the one hundred dollars on the purchase-

money of the lot in controversy to John T. McGraw. The business she engaged in, fortunately for her, required no capital, but it did require credit, and that credit was the capital which enabled her to conduct her business, and to accumulate the profits which she applied to this purchase. That credit was not the property of her husband, but belonged to her, and enabled her to carry on business to the same extent as if she had owned a separate estate, co-equal with the extent of her credit. Her credit was her separate estate, or rather what was purchased by using that credit; for this Court has held in the case of *Trapnell* v. *Conklyn, supra,* that "property purchased by a married woman from a person other than her husband, is her separate property, although purchased on credit, and paid for out of profits arising from its use by her, and although, when purchased by her, she had no separate estate."

The case of *Robinson* v. *Neill,* 34 W. Va. 128 (11 S. E. Rep. 999) was one in which a purchase of real estate was made be a married woman on time, who executed her notes for the deferred payments, which notes were paid by profits made from gathering ice from a pond on the land; and, although her husband acted as her agent in handling the ice, property purchased with the proceeds of said ice was held to be not liable to be sold as the property of said husband for his debts.

So, in the case of *Knapp* v. *Smith,* 27 N. Y. 277, it was held, that, under the statute the married woman might acquire property real or personal by buying on credit, and no interest therein would pass to the husband, whether she antecedently had any separate estate or not.

It would be difficult to conceive what benefit a married woman could derive from the fact that the statute authorizes her to take by inheritance, or by gift, grant, devise, or bequest from any person other than her husband, and hold to her sole and separate use, and convey and devise, real and personal property, any interest or estate therein, and the rents, issues, and profits thereof, in the same manner and with like effect as if she were unmarried, and that the same should not be subject to the disposal of her husband, nor be liable for his debts, if, by reason of her

character for honesty and industry, she was enabled to purchase property, real or personal, on credit, and, as soon as it was thus acquired, it should be subjected to the payment of the debts of an improvident husband. This case, however, seems to be relieved from a considerable portion of the complication involved in cases of a similar character which have been passed upon by this Court, by reason of the fact that the husband does not ˉappear to have taken any part by his skill, labor or otherwise in carrying on the business from which said one hundred dollars was realized, the whole business having been transacted and expenses thereof paid by the wife, without the intervention in any manner or form of the husband; and, under the former rulings of this Court, the money arising from the business was clearly hers, and, as a consequence, the property purchased with it was hers, and could not, under the statute, be held liable to the payment of her husband's debts.

The proof in this case being clear as to the manner in which the money was derived by Martha A. Stout with which to make the purchase of the property, and it thereby appearing that no part thereof was furnished by her husband, the case does not fall within the ruling of this Court in the case of *Burt* v. *Timmons*, 29 W. Va. 441 (2 S. E. Rep. 780) and, applying the law to the evidence taken in the cause, our conclusion is· that the court committed no error in dismissing the plaintiff's bill.

The decree complained of is therefore affirmed, with costs and damages.