OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

### Spring-Special Term, 1896.

## CHARLESTON.

BALLARD *v.* CHESAPEAKE & O. R'Y CO.

Submitted January 25, 1896—Decided April 1, 1896.

1. CHESAPEAKE & OHIO R. CO.—PRINCIPAL OFFICE.
   Under section 4 of chapter 3 of the Acts of 1870, the Chesapeake
   & Ohio Railroad Company, having completed its railroad from
   Richmond, Va., to the mouth of Big Sandy river, in Wayne
   county, W. Va., and the Chesapeake & Ohio Railway Company
   having purchased all the rights and privileges, franchises, and
   property of said first named company, and having succeeded
   thereto, and being engaged in operating its road through the
   states of Virginia and West Virginia, and not deeming it expe-
   dient to establish its principal office within this state, its place of
   business at or nearest Charleston, in the county of Kanawha,
   must for all purposes required be deemed to be such principal of-
   fice within this state.

2. CHESAPEAKE & OHIO R. CO.—CORPORATIONS—JURISDICTION.
   Said place of business at or nearest Charleston, in the county of
   Kanawha, being for all purposes required by law its principal
   office in this state, the fact that said Chesapeake & Ohio Railway

Company is doing business in other counties in this state will not
confer jurisdiction upon the circuit court of such counties to try
an action at law against it when the cause of action arose outside
of the state of West Virginia.

3. CHESAPEAKE & OHIO R. Co.—CORPORATIONS—JURISDICTION.
Under section 1 of chapter 123 of the Code such action should
be brought in the circuit court of Kanawha county, unless the
president or other chief officer of such corporation resides in the
county where the suit is brought.

SIMMS, ENSLOW & CHILTON for plaintiff in error, cited
Acts 1870, c. 3, s. 4; Code c. 123, s. 1; 33 W. Va. 135; Code
c. 125, ss. 44, 47; 4 Min. Inst. Pt. 1, pp. 591, 645, 646, 647; 26
W. Va. 379; 8 W. Va. 216; 11 W. Va. 276; 12 W. Va.
297; 30 W. Va. 296; 2 Tuck. Com. s. p. 211; 5 Am. & Eng.
Enc. Law, 464, 496; Hil. New Trials, 553, 554; 1 Graham
& Water. New Trials, 77, 78, 79; 6 Munf. 267; 8 Leigh, 109;
34 W. Va. 62; 41 W. Va. 550; 41 Cal. 17; 62 Ind. 352; 4
Wis. 45; 6 Wend. 514; 5 N. H. 531; 29 Eng. L. & E. 306;
106 N. C. 267; 4 Eng. Repts. 354; 58 Tex. 405; 53 Wis. 169;
87 N. C. 497; 65 N. C. 76; 29 Iowa, 510; 47 Minn. 428; 19
Wis. 525; 11 Lee, 227; 4 H. & M. 427; 29 Cal. 72; 62 Cal.
263; 26 Gratt. 71; 34 W. Va. 514; 35 W. Va. 117; 39 W.
Va. 50; 20 Miss. 550; 5 Iowa, 463; 33 Conn. 237.

JOHN W. HARRIS for defendant in error, cited 33 W. Va.
138; 4 Min. Inst. Pt. 1, p. 863; Bart. L. Prac. 187; 2 Leigh,
177; Code c. 125, s. 30; 26 W. Va. 274, 384; 29 W. Va.
777; 34 W. Va. 172; 6 W. Va. 79; 9 Leigh, 478; 26 Gratt.
67; 9 Gratt. 40; 10 Gratt. 509; 6 Rand. 125; 18 Gratt. 385;
8 Leigh, 114; 34 W. Va. 62; 20 S. E. Rep. 456; Code c.
131, s. 9; 39 W. Va. 659; 40 W. Va. 675.

ENGLISH, JUDGE:

On the 2d day of June, 1893, David Ballard was in
charge of some stock on a train belonging to the defend-
ant company, westward bound. When near Meachem's
river, in the county of Albemarle, in the state of Virginia,
the freight train on which said Ballard was riding stopped
to allow the fast passenger train going east to pass, and
while the freight train was standing at said point waiting
for the passage of the other train the said David Ballard

and several of the trainmen went across the track of the railway to pick some berries. In a short time after they had gone across the track the fast train from the west whistled around the curve for the station. The said Ballard, and the trainmen with him, started for their train, and said Ballard attempted to cross the track so close in front of the passenger train, which was running at the rate of about forty five miles an hour, that he was struck and killed. He came on the track from the inside of a curve, and the engineer was on the outside, and could not see him at the time he went on to the track in front of the train. The fireman was throwing coal into the fire box, and no one on the passenger train saw him, or knew that he was killed, until some time afterwards, when they received the news at a station farther east, announcing that he had been killed.

Henry Ballard was appointed his administrator, and brought this suit to recover damages for his death in the Circuit Court of Monroe county, W. Va. At the rule day to which the process in said action was returnable the defendant filed a plea in abatement to the jurisdiction of the court, which plea reads as follows:

"In the Circuit Court of Monroe County, State of West Virginia. Chesapeake and Ohio Railway Company *ads.* Henry Ballard admr. of David Ballard. Trespass on the Case. The said defendant, the Chesapeake and Ohio Railway Company, a corporation, by its president, M. E. Ingalls, comes and says that on the 1st day of July, 1878, the Chesapeake and Ohio Railway Company purchased all the rights, privileges, franchises, and property of the Chesapeake and Ohio Railroad Company, and as such purchaser the said railway company succeeded to all the rights, privileges, franchises, and property of the Chesapeake and Ohio Railroad Company; and that on the 1st day of July, 1882, the companies aforesaid had completed a line of railway from the waters of the Chesapeake Bay, near Richmond city, in the state of Virginia, to the mouth of Big Sandy river, in the county of Wayne, in the state of West Virginia; and that said defendant, the Chesapeake and Ohio Railway Company, at the

time of bringing this action, was and is now operating said line of railway as such purchaser as aforesaid in and through the states of Virginia and West Virginia; and that the court ought not to have or take any further cognizance of the action aforesaid of the plaintiff, because it says that the cause of said action did not, nor did any part thereof, arise in said Monroe county, but that the cause of said action and every part thereof (if any such cause there was) did arise in the county of Augusta, State of Virginia; and that after the completion of said line of railway neither of the said companies had deemed it expedient to establish the principal office of said line of railway in this state, and had established the principal office in the city of Richmond, state of Virginia, and at the time of issuing said writ the defendant, the Chesapeake and Ohio Railway Company, did not have its principal office in the county of Monroe, nor did its president, who is chief officer thereof, nor did any of the chief officers, reside in the said Monroe county, but its principal office was at the time, and ever since has been, and now is, in the city of Richmond, state of Virginia; and the president, at the time of issuing said writ, and ever since, and now is, a resident of the city of Cincinnati, county of Hamilton, state of Ohio; and at the time of issuing of said writ its other chief officers were, and ever since have been, and now are, residents of the state and county of New York; and that at the time of issuing of said writ it had a station and depot on its line of railway opposite the city of Charleston, county of Kanawha, West Virginia, which station or depot was and is its nearest place of business to said city of Charleston, and that at the time of issuing of said writ, and ever since have been, and now are, J. R. Baldridge and —— Moseman, two agents of defendant, in charge of said depot and station, upon either of whom said writ could have been served so as to be fully executed upon the defendant; and that at the time of the issuing of the said writ the said station and depot opposite the city of Charleston in said Kanawha county was its place of business nearest to the said city, and for all purposes required by law deemed to be its principal office in the state of West Virginia. Whereupon it prays judgment

whether this court can or will take any further cognizance of the action aforesaid. Chesapeake and Ohio Railway Company, by M. E. Ingalls, President."

On the 7th day of June, 1894, the parties came by their attorneys, and the plaintiff by his attorney objected to the filing of said plea to the jurisdiction by the defendant, and moved that the same be stricken out, and the cause was continued on motion of the defendant until the next term, and on the 5th day of October, 1894, the court sustained the plaintiff's objection to said plea to the jurisdiction, and held the same insufficient, and awarded a rule against the defendant to plead over, but, the said defendant failing to plead any other or further plea, the case was submitted to a jury to find the amount, if any, which the plaintiff was entitled to recover in said action, who, having heard the evidence and argument of plaintiff's counsel, found the amount the plaintiff was entitled to recover in said action to be six thousand five hundred dollars, and assessed his damages at that amount, and judgment was rendered for that amount, against the defendant.

On the 12th day of October, 1894, an order was entered in said case showing that on that day the plaintiff came by his attorney, and during the pendency of the motion of the defendant to set aside the verdict and judgment rendered on a former day of the term, released two thousand five hundred dollars of the said judgment, reducing same to four thousand dollars and costs, which release, on motion of the plaintiff, was entered on the record, and said judgment credited by said sum of two thousand five hundred dollars as of the date of the same. It also appears that on the 6th day of October, 1894, the defendant appeared by its attorney and gave notice in open court to the attorney for the plaintiff that he would on the 10th day of October, 1894, move the court to set aside said verdict and judgment (1) because the evidence did not warrant or justify the said verdict, and the same was contrary to the evidence; (2) because the damages assessed by the jury were excessive; (3) because of the absence of the defendant's counsel, caused by a mistake and misapprehension of a fact; (4) because of surprise to the defendant owing to the absence of its counsel at

the trial of said cause; and filed three affidavits in support of said motion, and on the 12th day of October the order above referred to was made releasing two thousand five hundred dollars of said judgment, and, thereupon the court overruled the defendant's motion to set aside the verdict and judgment thereon and grant it a new trial, and the defendant excepted, and took a bill of exceptions, and obtained this writ of error.

The first error assigned and relied on by the defendant is as to the action of the court in sustaining the objection to the defendant's plea in abatement, which had been properly filed in the case on the first rule day before any conditional judgment had been taken, setting up that the cause of action had arisen in Virginia, and that, if the plaintiff had any cause of action against the company, it would have to be brought in the circuit court of Kanawha county, because the principal office of the company in the state of West Virginia was the station opposite Charleston in Kanawha county. Now, in discussing the question of jurisdiction raised by this plea it is pertinent to inquire first whether the defendant, at the time of the issuing of this writ, had a principal office in this state, as our statute (chapter 123, section 1, Code) provides that an action at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county, if a corporation be a defendant, wherein its principal office is, or wherein its mayor, president, or other chief officer resides; or if its principal office be not in this State, and its mayor, president or other chief officer do not reside therein, wherein it does business. This section, it will be perceived, limits the jurisdiction to the county wherein its principal office is, and when we look to the statute which fixes the location of the principal office of the defendant in this state, we find that section 4 of chapter 3 of the Acts of 1870, entitled "An act confirming and amending the charter of the Chesapeake and Ohio Railroad Company," provides that upon the completion of the road, if the said company shall not deem it expedient to establish its principal office within this state, its place of business at or nearest Charleston, in the county of Kana-

wha, shall for all purposes required by law be deemed to be such principal office within this state. And until such completion all notices and legal process shall be sufficiently served upon the company if delivered in person to the president, vice president, or any director of the company, whether in this state or elsewhere. The plaintiff, by his objection to the plea, says that, admitting everything properly averred in the plea to be true, yet it does not constitute a good and valid defense to the action; and the court sustained said objection, and held that the plea did not constitute such defense. Now, when we look on the face of the plea we find that on the 1st day of July, 1882, the Chesapeake & Ohio Railroad Company had completed its line of railway from the waters of the Chesapeake Bay, near Richmond city, in the state of Virginia, to the mouth of Big Sandy river, in the county of Wayne, in the state of West Virginia, and that the defendant, the Chesapeake & Ohio Railway Company, at the time of bringing this action was, and was at the time of filing said plea, operating said line of railway as purchaser of all the rights, privileges, franchises, and property of the Chesapeake & Ohio Railroad Company in and through the states of Virginia and West Virginia; that the cause of action did not, nor did any part thereof, arise in Monroe county, but that the cause of said action, and every part thereof (if any such cause there was) did arise in the county of Augusta, state of Virginia; that the principal office of said railway had been established in the city of Richmond, state of Virginia, and at the time of issuing said writ the defendant did not have its principal office in the county of Monroe, nor did its president, who is the chief officer thereof, nor did any of its chief officers, reside in said county of Monroe, but that its principal office was at the time, and ever since has been, and now is, in the city of Richmond, state of Virginia; and that the president at the time of issuing said writ and ever since has been and now is a resident of the city of Cincinnati, Ohio, and at the time of issuing said writ its other chief officers were, and ever since have been, and now are, residents of the state and county of New York; and that at the time of issuing said writ it had a station and depot on its line of railway

opposite the city of Charleston, county of Kanawha, W. Va., which station or depot was and is its nearest place of business to said city of Charleston, and that at the time of issuing said writ, J. R. Baldridge and —— Moseman, two agents of defendant, were and ever since have been, and now are, in charge of said depot and station, upon either of whom said writ could have been served so as to be fully executed upon the defendant; and that at the time of issuing said writ the said station and depot opposite the city of Charleston, in said Kanawha county, was its place of business nearest to said city, and for all purposes required by law deemed to be its principal office in the state of West Virginia.

Taking, as we must, the averments of this plea to be true, did the circuit court of Monroe county have jurisdiction of this case? The defendant is a corporation, and was at the time the writ issued. Neither its president nor other chief officer resided in said county, and its principal office, for all purposes required by law, was at its place of business at or near Charleston, in the county of Kanawha, which for all purposes required by law under section 4 of chapter 3 of the acts of the legislature of West Virginia passed January 26, 1870, must be deemed the principal office of the defendant in this state, and this being made by this act its principal office in the state of West Virginia, and agents being present at this place of business upon whom process could be served under section 1 of chapter 123 of the Code, this action should have been brought in the circuit court of Kanawha, wherein its principal office was and is. The cause of action did not arise in this state, but did arise in Virginia. If the defendant's principal office for all purposes required by law was not fixed by said statute at the station opposite Charleston, and if its president or other chief officer resided in Monroe county, this suit might have been maintained in that county, because it does business therein; but as the president and other chief officers reside out of the state, and not in Monroe county, and the defendant's principal office is at Charleston, the suit should have been brought in the circuit court of the county where the principal office was, and not in the circuit court of the

county wherein it did business. In other words, under the circumstances, the fact that the defendant did business in Monroe county did not confer jurisdiction in this case upon the circuit court of that county. In the case of *Humphreys* v. *Newport News, etc., Co.*, 34 W. Va., 135, (10 S. E. 39) (first point of syllabus) this Court held that "a foreign corporation doing business in this state, having no principal office or president therein may be sued in any county wherein it does business, where the cause of action arose out of this state, if process can be legally served in such county." That syllabus, as I understand it, propounds the law correctly, but when the statute provides that when the defendant's railroad is completed (which has been done and was done before the institution of this suit) "its place of business at or nearest Charleston, in the county of Kanawha, shall for all purposes required by law be deemed to be such principal office within this state," it must be held to be its principal office in this state when questions of jurisdiction like the one under consideration are presented for determination, as this is one of the purposes required by law; and holding this place of business nearest Charleston to be its principal office in this state for the purposes of this suit, our conclusion is that the fact that the defendant did business in Monroe county at the time the writ issued would not confer jurisdiction upon the circuit court of Monroe county.

The court erred in sustaining the objection to said plea, and for these reasons the judgment complained of should be reversed, and the cause remanded with costs to the appellant.