# CHARLESTON.

### EDGELL v. SMITH.

Submitted June 17, 1901.    Decided November 30, 1901.

1. BILL—*Amendment—Limitation of.*

    A bill in chancery cannot be so amended as to introduce new matter and entirely change the original purpose of the suit, and have relief upon a different ground.  (p. 353).

2. BILL—*Depositions—Matters Not Alleged.*

Depositions proving matters not in an original bill when taken cannot be read to support substantive matters in an amended bill afterwards filed, and a decree based on such amended bill, supported by only such depositions previously taken is erroneous. (p. 354).

3. BILL SHOWS NO GROUNDS—*Relief—Amendment.*

When an original bill shows a case wherein there can be no relief because it is based on and grows out of a conveyance fraudulent as to creditors, no amended bill is allowable to the guilty plaintiff. (p. 355).

4. SUIT IN EQUITY—*Fraudulently Maintained.*

A suit in equity cannot be maintained to cancel a deed made to hinder, delay or defraud creditors, though grantor and grantee are equally guilty, and equity will take no step to help either, but will leave them where they placed themselves under the maxim, *"In pari delicto potior est conditio defendentis."* (p. 355).

5. FRAUDULENT CONVEYANCE—*Intent—Creditors.*

To make a conveyance fraudulent as to creditors it is not necessary that the intent be to entirely defraud them out of their debts. If the intent is to either hinder or delay them, or defraud them, by a conveyance which places an obstacle in the way of the prosecution of their legal remedies, it is void under the statute against fraudulent conveyances. (p. 355).

6. FRAUDULENT CONVEYANCE—*Creditors.*

A conveyance by a debtor to secure his property from immediate subjection to debts of creditors is a fraudulent act on his part, and as to him void as against them, though honestly made, the debtor intending that his creditors shall be ultimately paid. (p. 360).

7. SUIT FOR FRAUD—*Delay—Limitation.*

To set aside a deed for fraud suit must be brought without unreasonable delay after discovery. (p. 361).

Appeal from Circuit Court, Wetzel County.

Bill by Daniel Edgell and others against L. L. Smith and others. Judgment for complainants, and L. L. and H. L. Smith appeal.

*Reversed.*

WILEY & KEIFER, for appellants.

McINTIRE & McINTIRE, for appellees.

BRANNON, PRESIDENT:

Daniel Edgell and others, as heirs of Pinkney Edgell, exhib-

ited a bill in equity in the circuit court of Wetzel County
against L. L. Smith and H. L. Smith, her husband, and others,
stating that on the 5th day of August, 1890, "the said Pinkney
Edgell was indebted to various persons in small sums of money,
and being seized of a tract of land lying in Grant district of said
county, containing forty-two acres, more or less, he was per-
suaded by the defendants, L. L. Smith and H. L. Smith, to
convey said tract of land to L. L. Smith until he could arrange
with his creditors; that on the 5th day of August, 1890, the
said Pinkney Edgell, at the instance and request of H. L. Smith
and L. L. Smith, did, without any consideration whatever, con-
vey to L. L. Smith, wife of H. L. Smith, said forty-two acres of
land; that at the time of such conveyance it was understood be-
tween the said Pinkney Edgell and defendants Smiths that L.
L. Smith and her husband were to reconvey to the said Pinkney
Edgell upon the same conditions, with the same covenants and
without any reservation whatever, the said forty-two acres of
land whenever she should be requested thereafter by said Pink-
ney Edgell; that after said Pinkney Edgell had arranged with
his creditors, he did request said L. L. Smith and H. L. Smith to
re-convey said land to him, and that on the 12th day of March,
1894, L. L. Smith and H. L. Smith did execute to said Pinkney
Edgell a deed for said forty-two acres of land, but without de-
lievering said deed to Pinkney Edgell sent the same to the clerk
of the county court for recordation, and that the same was
recorded." Both said deeds stated the consideration as three
hundred and fifty dollars, and acknowledged the payment
thereof. The bill alleged that the statement of the consideration
in both deeds was false, and that no consideration was ever paid
by L. L. Smith to Edgell, and that Edgell never paid L. L.
Smith any consideration whatever, and that during all the time
L. L. Smith held title Pinkney Edgell held possession of the
land, and that L. L. Smith had never had control of it. The bill
further stated that L. L. Smith and H. L. Smith, "for the pur-
pose of defrauding Pinkney Edgell and his said children, did,
without his knowledge, reserve by a clause in said deed of con-
veyance all oil, gas and coal privileges, which she now attempts
to hold as against his heirs at law." The bill further shows
that afterwards Pinkney Edgell conveyed to Selecta Edgell, his
daughter, the said land, reserving the oil, gas and coal; and
that later said Selecta Edgell and her husband, Samuel Edgell,

conveyed the same land to the said H. L. Smith, reserving the oil, gas and coal. The bill further stated that the Smiths had leased the land to the South Penn Oil Company for oil and gas purposes, which had bored two oil wells on the land and produced large quantities of oil therefrom, and that one-eighth of it, the royalty oil, was being credited to L. L. Smith. The bill thus charging that the conveyance from Pinkney Edgell to L. L. Smith, as well as that from L. L. Smith and H. L. Smith to Pinkney Edgell, were void for want of consideration, and that the reservation in the deed of L. L. Smith and H. L. Smith to Edgell of the oil, gas and coal was made without the knowledge or consent of said Edgell for the purpose of defrauding Pinkney Edgell, prayed that both deeds be decreed null and void and be set aside, and that the oil company be restrained from delivering to L. L. Smith any oil. Great many depositions were taken on both sides. The defendants, Smith and wife, having answered, denying all the material allegations of said bill, and averring that the said conveyance from Pinkney Edgell to L. L. Smith was an absolute conveyance in good faith, and that the clause inserted in the deed of the Smiths to Pinkney Edgell was inserted with the full knowledge and consent of Pinkney Edgell. In short, the answer denied all charges of fraud in the bill. After all the depositions had been taken, some two years after the institution of the suit, the plaintiffs, without leave of court, filed in the clerk's office an amended bill in which they alleged that the conveyance from Pinkney Edgell to L. L. Smith was in truth made when Pinkney Edgell was being pressed by his creditors and had no means to pay them, and that he was persuaded by the said Smiths to make it with the promise and understanding that they would furnish him with money to liquidate his indebtedness, and that when his creditors should be fully paid and he had refunded to them the money furnished Edgell for paying his creditors, then they, the said Smiths, would, upon request, re-convey the land to Pinkney Edgell without any reservations, and that there was no other consideration for the conveyance. The amended bill denied that the Smiths had complied with their promise to furnish money with which to pay Edgell's debts, and repeated the charge of the original bill that the clause reserving oil, gas and coal in the re-conveyance of the land from the Smiths to Edgell was inserted therein without consideration or the consent or knowledge of Edgell with intent

to defraud him of said minerals. The decree of the circuit court was that the conveyance from Edgell to Mrs. L. L. Smith was in fact but a mortgage to secure L. L. Smith a loan of money, and not an absolute conveyance, and that the money had been paid back to Mrs. Smith, and that Pinkney Edgell was entitled to have the land re-conveyed to him without reservation in his lifetime, and died the owner of the oil, gas and coal, and that his heirs were entitled to the oil and gas, subject to the rights of the South Penn Oil Company, and that the reservation of the said minerals in the deed re-conveying the land from the Smiths to Edgell was void and that same be cancelled. From said decree L. L. Smith and H. L. Smith appeal.

This decree is based solely upon the amended bill, because there is not in the original bill a word of allegation that the deed from Pinkney Edgell to L. L. Smith was only as security for a loan. This inevitably presents the question whether that decree can stand upon the amended bill. It cannot for two reasons. The first reason is that it is a departure from the original bill, presenting a theory of relief different from, distinct from, not germane to, the allegations of the original. The original bill calls for relief upon the theory that the conveyance was made to shield the property from creditors with the promise from the Smiths that it would be re-conveyed to Edgell after settlement with creditors, and it averred that Smiths paid no money whatever, and it did not hint that they were to furnish any money as a loan; it set up that it was a conveyance upon a secret trust of re-conveyance, made solely to save the land from creditors, utterly denying that it was upon any money consideration or loan from Smiths. The amended bill states that it was made simply to secure a loan, a silent mortgage. The two bills are inconsistent with each other. In *Bird* v. *Stout,* 40 W. Va. 43, this Court held: "An amended bill must not introduce another and different cause of suit from that of the original bill; but an amended bill is no departure from the original if it tend to promote a fair hearing of the matter of controversy on which the suit was originally really based, provided it do not introduce a new substantive cause of suit different from that stated, and different from that intended to be stated, in the original bill. An amended bill cannot be allowed containing statements inconsistent with the nature of the original bill or changing the cause of suit. By it allegations may be changed and modified, and

others added, provided the identity of the cause of suit be preserved." In *Piercy* v. *Beckett,* 15 W. Va. 444, it was held that "Amendments can only be granted when the bill is defective in parties, or in prayer for relief, or in the omission of or mistake as to a fact or circumstance connected with the substance, but not forming the substance itself, or for putting in issue new matters to meet proper allegations in the answer." The limitation here stated would not tolerate this amended bill. In *Christian* v. *Vance,* 41 W. Va. 754, the syllabus says: "A bill in chancery cannot be so amended as to introduce new matter, and entirely change the original purpose of the suit." Tried by these principles the amended bill was improperly filed and therefore cannot justify the decree founded alone upon it. The defendants demurred to it, but their demurrer was overruled. The Code of 1899, chapter 125, section 12, provides that the plaintiff may at any time before or after the appearance of the defendant in vacation file in the clerk's office an amended bill, and provides that if the same be improperly filed, it shall be dismissed. Under that section the demurrer should have been sustained, as also under general equity practice, and it was error to base a decree upon it.

The second reason why the decree cannot rest on the amended bill is that it was filed long after the depositions to sustain the theory presented by it had been taken—all the depositions in the case. *Goldsmith* v. *Goldsmith,* 46 W. Va. 426, holds that, "Depositions proving a matter not in the pleadings when taken cannot be read to support an answer afterwards filed setting up such matter, if objected to." I do not see how, after all depositions have been taken, an amended bill setting up a different case can be filed to suit the proof already taken. Even where the amendment is proper, if it introduce new facts necessary to be proven, I do not see how they can be decreed upon on proof taken when those facts, substantive facts, were not in the pleadings. Our statute does allow an amended bill, without the leave, of court, at any time after appearance; but surely this was not meant to allow a party to prove matter not in the pleadings, and which the other party was not called upon to meet, or controvert at the time when his adversary took his proof. There must be allegations before proof, and this is a cardinal rule which no statute has dispensed with. The adverse party has no notice, and when the proof is taken of matters not in the plead-

ings, he is under no obligation to answer such proof. May he not say that such new matter introduced after evidence taken, is unproven, even where such new matter is proper for introduction by amended bill or other pleading? If this is so where the matter is proper in the suit, vastly more so, is such the case when it is not proper. In fact, the latter remark may be dispensed with, because the matter being not germane, cannot be proven at any time, either before or after the pleading introducing it. So much as to that feature of the decree declaring the deed from Edgell to L. L. Smith a mortgage. But I may add still another reason just occurring to me, though it is presented by counsel, and that is, that the original bill in law called for no relief, and therefore there could be no amended bill, because the original bill, for the reason next to be stated, denied the plaintiffs any relief. *Walton* v. *Hutton*, 9 W. Va. 339.

From the character of the original bill, as will appear from the statement, it is plain that it admitted that Edgell made the deed to Smiths with intent to delay or hinder his creditors, if not with ultimate intent to wholly defraud them out of their debts. In *Goldsmith* v. *Goldsmith,* 46 W. Va. 431, the very common principle is stated that "the plaintiff cannot sustain a suit in equity to cancel a deed made to defraud creditors, as the law is, that both grantor and grantee are equally guilty, yet equity will take no step to help either, but leave them where they placed themselves, under the maxim, '*In pari delicto potior est conditio defendentis.*" *Horn* v. *Foundry Co.,* 23 W. Va. 522; *Cain* v. *Cox, Id.* 594; *McClintock* v. *Loisseau,* 31 W. Va. 865, (8 S. E. 612); *Stout* v. *Mercantile Co.,* 41 W. Va. 339, (23 S. E. 571)." *Corrothers* v. *Harris,* 23 W. Va. 177, puts the short proposition, held everywhere in equity courts, "Equity will not interfere between parties to the relief of one against the other in a fraudulent transaction." It may be said that the bill states that the conveyance was not made with design to utterly defraud Edgell's creditors, but only to convey the land to Smith until Edgell could arrange with his creditors, and that he might have designed ultimate payment. This will not save the bill from an admission under which the law brands that deed as fraudulent. The statute against fraudulent conveyances, Code 1899, chapter 74, section 1, says that any conveyance made with intent "to delay, hinder, or defraud creditors" shall be void, that is, either to delay, hinder, or defraud. Any act tending to hinder, delay

or defraud, done with evil mind, falls under the condemnation of that statute. Vol. 14, p. 244; Am. & Eng. Ency. L. (2 Ed.), states the law thus: "But in order to render a deed fraudulent, it is not necessary that the debtor should intend to entirely defeat the creditor in the collection of his claim. Creditors are entitled not only to be paid, but to be paid as their claims accrue, and a debtor has no more right to postpone payment simply for his own advantage, than to defeat it altogether. A purpose to delay and hinder a creditor is therefore fraudulent, although the debtor may honestly intend that all his debts shall ultimately be paid." Waite, Fraudulent Conveyances, ss. 11, 318, will sustain this view. "The words, 'hinder,' 'delay' and 'defraud' are not synonymous. A conveyance may be made with intent to hinder or delay, without an intent to absolutely defraud. Either intent is sufficient. The statute is in the disjunctive, and attempts to attach a separate and specific meaning to each of the words which it employs. * * * * A conveyance made by an embarrassed debtor with a view, which was known to the purchaser, to secure the property from attachment, is void though honestly made, the debtor intending that all creditors should be paid in full. * * * * The debtor's property is, in theory of law, subject to immediate process issued at the instance of his creditors, and the debtor will not be permitted to hinder or delay them by any device which leaves it, or the avails of it, subject to his control and disposition; and it makes no difference that the debtor intends to apply the avails of it to the payment of his debts." The same principle will be found in Bump, Fraud. Convey., s. 23, and *Quarles* v. *Kerr*, 14 Grat. 48. The bill not only admits enough to make the conveyance void under the statute, but the proof from the witnesses of the plaintiffs and other evidence establishes explicitly and fully, without contradiction, that Edgell's purpose was to remove, at least temporarily, his land from the process of creditors, if not wholly to defraud them; but we need not assert the latter intent. So much of the decree as adjudges void the reservation in the deed back from Smiths to Edgell of the minerals is based on the original bill as well as the amended bill, and as that original bill has the objection of fraud just stated, the decree in that respect cannot stand upon it. The demurrer to it should have been sustained, as no decree can be based on that original bill. Besides, any right to a re-conveyance of the minerals which

Edgell might have had grows out of that fraudulent conveyance, which can give rise to no right, and no relief can spring from it. That part of the decree resting on the amended bill cannot stand for reasons above stated as to it; that part resting on the original bill cannot stand for reasons stated as to it.

Neither bill will support the decree holding void the reservation of minerals for reasons stated above as to those bills. But as the original bill assails that reservation, I will consider, though not compelled to do so, owing to the obnoxiousness of that bill above stated, the question of the validity of that reservation tested by the evidence. The evidence to sustain the charge that that mineral reservation was inserted fraudulently hangs, I may say almost exclusively, upon Daniel Edgell and Irwin Edgell, two sons of Pinkney Edgell, and Samuel Edgell, his son-in-law, all prejudiced by interest in the result of this suit, as both our knowledge of human nature and the reading of their depositions will attest. And their evidence at best is very short and inconclusive to establish the grave charge of fraud consisting in the insertion of a clause in a deed solemnly signed, sealed and acknowledged, and spread on the records. It takes a great deal of evidence to overthrow solemn writings. They are the highest evidence of man's transactions, and should not fail at the bidding of oral evidence of mere conversations such as those spoken of by those witnesses. Neither of these witnesses was present at the execution of this deed. They do not speak of it as a matter of their personal knowledge. They detail declarations of Pinkney Edgell in the absence of the Smiths, and those declarations constitute nine-tenths of their evidence. Those declarations made in the absence of the Smiths are utterly inadmissible, because they were made by a man in his own interest, not against his own interest; they are self-serving declarations, not self-disserving. "A party's self-serving declarations can not be put in evidence in his own favor, whether he be living or dead at the trial." 2 Wharton, Ev., s. 1101. See *High v. Pancake*, 42 W. Va. 602. Edgell could not by declarations made after this deed destroy Smiths' right. *Casto v. Fry*, 33 W. Va. 449. How it is expected that a court should overthrow a deed almost exclusively upon the strength of declarations made by one of the parties afterwards in his own interest and in the absence of the other parties, I do not understand. And as to all these declarations of H. L. Smith, or Edgell, I will add that

as Starkie on Evidence, page 825, says that "of all kinds of evidence, that of extra-judicial and casual declarations is the weakest and most unsatisfactory; such words are often spoken without serious intention, and they are always liable to be mistaken and misremembered, and their meaning liable to be misrepresented and exaggerated. A hearer is apt to clothe the ideas of the speaker as he understands them, in his own language, and by this translation the real meaning must often be lost. A witness, too, who is not entirely indifferent between the parties, will frequently, without being conscious that he does so, give too high a coloring to what has been said." This quotation from Starkie could scarcely have a stronger instance for its application than is found in the loose, casual declarations detailed by those three witnesses. I cannot detail the evidence. It would answer no purpose in an opinion. The whole strength of the plaintiff's case consists in those loose declarations made by Pinkney Edgell, and a few of them by H. L. Smith. They are not declarations of Mrs. L. L. Smith. Can they be used to destroy her estate? I think not. True, her husband was evidently her agent in the transaction of this business; but an agent to acquire estate for another, is not an agent to destroy that estate by his after declarations. And in the particular transaction of the execution of the deed from Mrs. Smith and her husband to Edgell, the husband was not her agent so as to make his declarations touching it bind her. We must not here forget, because it is very important in the case, that this is a suit to set aside the reservation on the sole ground of fraud in its insertion in that deed, and the legal principle often laid down that a plaintiff who alleges fraud must clearly and distinctly prove it, as the *onus probandi* is on him. *Armstrong* v. *Bailey,* 43 W. Va. 778; *Pusey* v. *Gardner,* 21 *Id.* 469. The truth, however, is that the evidence is strongly and decisively preponderant against the charge that Smith inserted that clause without the knowledge and assent of Edgell. Those witnesses, Samuel, Daniel and Irvin Edgell are contradicted in their evidence as to declarations of H. L. Smith by John T. Starky, who, is a disinterested witness, to say nothing of H. L. Smith's contradictions.

Irvin and Daniel Edgell, as to their evidence of H. L. Smith's declarations, are contradicted flatly by H. L. Smith, and they having gone on the stand as to those declarations, H. L. Smith is thereby rendered competent. The evidence of the plaintiffs'

side taken alone is utterly inadequate to fill the standard neces-
sary to establish fraud and overthrow a deed; but when we take
up the evidence for the defense the case is one-sided upon the
charge of such fraudulent insertion of the mineral resrvation.
John T. Starkey says that he was present when the deed con-
taining that reservation was signed and acknowledged, and that
after they left the house where the deed had been executed,
Smiths' house, Edgell told him that he was glad that he had
got the re-conveyance, and that the royalty was worth nothing.
He further says that Pinkney Edgell several times told him that
he had sold the royalty to Smiths. Edgell told W. A. Smith that
same evening that he was glad the matter had been fixed up, and
that Smiths retained the royalty and that it was worth nothing
anyhow. J. W. Starkey says that after that deed was executed
Pinkney Edgell told him that Smiths owned the oil, gas and
coal in the land. Susannah Starkey says that she heard Pinkney
Edgell say that he had sold Smiths the coal, oil and gas; that she
heard him say so several times. John Stout says that Edgell told
him that he had got his home back and was well satisfied as to
the oil, that there was none there, that it had all been drained
away anyhow. Sarah Stout says that Pinkney Edgell told her
he had sold his oil to Smiths. A. L. Stout says the same. L. S.
Walters says that when Edgell was acknowledging before the
justice the conveyance of the land to his daughter, Selecta, the
justice asked him about the clause in it reserving oil, and he said
he had sold it to Smiths. W. A. Smith distinctly says that
Pinkney Edgell told him that Mrs. Smith had made him back
a deed and had reserved the oil, gas and coal. These many dis-
interested witnesses show that Pinkney Edgell knew of and as-
sented to that clause. What he got for it we do not know, ex-
cept from the deposition of the Smiths, who state that some
sixty odd dollars which had been paid in money to Edgell when
he conveyed the land to Mrs. Smith was retained by Edgell as
pay for the reserved royalty. H. L. Smith's evidence may be
competent, as the royalty was not reserved to him, but to his
wife. I have not examined as to this. I exclude his evidence
as to that consideration, and say that a sealed deed imports con-
sideration. And I add that it is clearly shown that the title
conveyed by Pinkney Edgell to Mrs. Smith was wanting in the
absence of a deed from Peterson, and that Pinkney Edgell re-

quested Smith to clear this up, and that Smith had to pay, and did pay, one hundred and twenty-five dollars to Mrs. Starkey to obtain her conveyance, a necessary link in the chain of title, as she was not bound by her prior contract of sale.

As to the charge that Smith put the deed on record without knowledge of Edgell. It is clearly proven by disinterested evidence that H. L. Smith paid five dollars to Pinkney Edgell in settlement as additional money to record three deeds, and that Pinkney Edgell sent the deed in question with two others to the clerk's office for recordation. Therefore, the decree setting aside that reservation was without sufficient evidence to establish the fraud and against the great weight of the evidence, decidedly against it. It may be said that the fact that Selecta Edgell, in her deed to H. L. Smith, reserved oil, gas and coal shows inconsistently with the claim of Mrs. Smith that the reservation was honest, as it may be asked if that reservation in the deed from Mrs. Smith and husband was *bona fide,* why would H. L. Smith accept a deed from Selecta Edgell reserving minerals. The answer is that Selecta Edgell's conveyance was not to Mrs. L. L. Smith. Can the court take the acceptance by H. L. Smith of the deed from Selecta Edgell as a destruction of the pre-existing estate of Mrs. L. L. Smith? Could he thus destroy her right? Is the act of acceptance of such deed even evidence against her? But let us suppose that deed had been made to Mrs. Smith herself. Selecta Edgell's reservation would be right, because the minerals had been reserved from her in the deed to her from her father, and in her deed she simply repeated the language of reservation employed in the deed from her father to her, and also in the deed from the Smiths to her father. As she did not own the minerals, she could not convey them, and thus break her warranty, and afford Smith a defense against payment of the deferred purchase money. Smith protested against the reservation, but she insisted upon it, saying that its omission would breed trouble. She was right. True, that clause might have been inserted more properly as a limitation upon the warranty, and she could not, technically speaking, reserve what she had not; but she simply intended to convey the land excepting the minerals, and simply repeated the language of the prior deeds.

Another reason against the decree declaring said reservation void is *laches.* Upwards of three years elapsed between the date of the deed from Smiths to Edgell and the commencement of

the suit.  As stated above, the evidence clearly shows that Pinkney Edgell knew of that reservation from the very execution of the deed; but if we say that he did not, there was the deed spread upon the public records of the county, and a man or his heirs cannot say that they did not know of a fraud when means of ascertaining it are at hand, such as usually inform people. As stated in *Lafferty* v. *Lafferty,* 42 W. Va. 783, parties cannot shut their eyes or omit diligence in obtaining information accessible by the exercise of reasonable care.  The world must move on and persons having an interest in earthly affairs must be zealous, else they will be charged with a knowledge of things readily ascertainable.  *Non dormientibus, sed vigilantibus leges subveniunt.*  How strictly equity requires diligence of suits to set aside conveyances for fraud will be seen in *Williams* v. *Maxwell,* 45 W. Va. 297, and *Whittaker* v. *South West Va. Improv. Co.,* 34 *Id.* 217.  Therefore we reverse the decree and dismiss the suit.

*Reversed.*