## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

STEAGALL V. STEAGALL.

BARR & AL. V. SAME.

JUNE 22d, 1893.

RESULTING TRUSTS—*Married Women—Estoppel.*—A married woman is not estopped from claiming as against her husband's creditors, a resulting trust in land paid for by her father and intended to be hers, but deeded to her husband by his collusion with the grantor, by reason of the failure of her father and herself to take positive action during his lifetime, if she did not then know how the title stood, nor what her father's intentions were, and did assert her title before it was assailed.

Appeal from decree of circuit court of Washington county, rendered October 6, 1887, in two chancery causes heard together wherein Mrs. M. E. Steagall was complainant in the first, and A. J. Steagall, Jr., was defendant; and in the second, W. F. Barr & al. were the complainants, and said A. J. Steagall, Jr., was defendant. Opinion states the case.

*G. W. Wood*, and *Daniel Trigg*, for appellant.

*Honaker & Hotters*, for appellee.

HINTON, J., delivered the opinion of the court.

These causes were by a decree of the circuit court of Washington county heard together.

But the only controverted question in the cases arises be-

tween Mrs. Mary E. Steagall and the creditors of her husband, and that is whether the tract of 63¾ acres of land in the proceedings mentioned is the land of her husband, from whom she has been divorced, or whether there is a resulting trust in her favor. Such a trust arises when an estate has been purchased in the name of one person and the purchase money or consideration has been paid by another.

In such cases the presumption of law is that the party paying for the estate intended it for his own benefit, and that the nominal purchaser is a mere trustee. The trust results from the original transaction, and arises at the time of the execution of the conveyance, or not at all, and it is founded upon the payment of the money or consideration. Payment, therefore, of the purchase money by the alleged *cestui que trust* before or at the time of the purchase is indispensable. And as the trust arises out of the circumstance that the moneys of the real and not of the nominal purchaser formed at the time the consideration of the purchase and became converted into it, a subsequent payment will not, by relation, attach a trust to the original purchase. *Miller* v. *Blose,* 30 Gratt., 751; Hill on Trustees, m. p., 95; 2 Minor's Institutes, m. p., 191.

The proof, however, which is thus to create a trust which is to override the deed, should be clear and convincing. Mere loose or equivocal facts, such as possession of the property by the party who is alleged to have advanced the money, will not be sufficient, but the circumstances must be such as lead irresistibly to the conclusion that the money could not have been paid by the nominal purchaser, and mere parol evidence should be received with great caution. *Bank U. S.* v. *Carrington,* 7 Leigh, 581; *Miller* v. *Blose, supra;* Hill on Trustees, m. p., 97.

In *Miller* v. *Blose* this court said: "The ground of a resulting trust is, that the payment of the purchase money is an equity to have the land. But the mere fact of payment will not always be sufficient to raise a clear presumption of a trust. Evidence of intention must often enter into the fact whether

that payment is such an equity under the circumstances." If the money is furnished by a parent, or one standing in *loco parentis*, to the grantee, who is an infant, or if he is the grantee's husband, the supposition that the grantee was meant to be, by implication, only a trustee, is repelled, and supplanted by the contrary presumption that the design was to make a provision for the child or wife, unless it be made clearly to appear that in the particular case the presumption is misplaced. 2 Min. Inst., m. p. 191, and cases cited. And the case of the payment of the money by the father-in-law when the son-in-law is the grantee, in *Miller* v. *Blose, supra,* is placed in this category.

Now, applying the doctrine of resulting trusts as just stated to the facts in this record, it clearly appears that there is a resulting trust as to this property in Mrs. Steagall, and the presumption that this was a provision for his daughter by George Keller is entirely dissipated. The concurrent testimony of all the witnesses who speak upon the point, as well as the irresistible deductions from the correspondence which passed between Clarkson Coffin and the said George Keller in relation to the collection of the purchase money, proves beyond a doubt that George Keller paid the whole of the consideration, while the admission of A. J. Steagall, the husband, shows that he obtained the legal title by collusion with " old lady Coffin," who " was a pretty good friend to him, and had the deed made to him," in defiance of the intention of his father-in-law.

But it is contended, that admitting all this, that the failure of George Keller during his life, and Mrs. Steagall since, to assert her rights, ought to conclude her as against creditors. To this we cannot assent. The rights of Mrs. Steagall were fixed at the time of the execution of the deed, and, so to speak, could not be divested by the failure of her father to take some positive action afterwards. He did, however, express his dissatisfaction with what Steagall had done, and told him that it must be changed. As to Mrs. Steagall, it does not distinctly appear

that she knew how the legal title stood, or exactly what her father's intentions were, until after the death of her father. She was under all the disabilities of coverture until she was deserted by her husband in the year 1885, and she asserted her title long before it was assailed. This was all under the circumstances that we think could be expected of her.

The decree appealed from is clearly erroneous and must be reversed and annulled, and the cause must be remanded for a decree to be rendered in conformity with the views herein expressed.

DECREE REVERSED.