# CHARLESTON.

MILLS et al. v. McLANAHAN et al.

Submitted March 14, 1911.   Decided February 6, 1912.

1.   SPECIFIC PERFORMANCE—*Proceedings*—*Sufficiency of Evidence.*
     A case in which the evidence is sufficient to establish the loss, and the contents of a title bond, entitling plaintiffs to specific execution thereof.   (p. 289).

2.   VENDOR AND PURCHASERS—*Requisites and Validity of Contract*—*Definiteness.*
     The practical location of land sold by title bond, by survey and plat thereof, directed by the vendor or his authorized agent, and possession by the vendee in accordance with such survey and plat, will, as a general rule, be sufficient to give the requisite definiteness to a contract, though it may be otherwise defective. (p. 291).

3.   SPECIFIC PERFORMANCE—*Proceedings*—*Sufficiency of Evidence.*
     A case in which the evidence, showing payment of all the purchase money, is held sufficient to establish that fact, and to entitle plaintiffs to specific execution of a contract for the sale and purchase of the land called for by the contract.   (p. 292).

4.   VENDOR AND PURCHASER—*Bona Fide Purchasers*—*Notice*—*Possession of Premises.*
     The defense of innocent purchaser is not available as a defense against one in actual possession holding under a prior equitable title, from the same vendor.   The law imputes to such subsequent purchaser knowledge of all the rights which an inquiry of the purchaser in possession or those holding under him might disclose.   (p. 293).

5.   SPECIFIC PERFORMANCE—*Proceedings*—*Laches.*
     The defense of laches is not good in a suit for specific performance, against one who has held possession of the land called for, under his contract of purchase, though many years may have elapsed between the date of the contract, and possession under it, and the date of the institution of the suit.   (p. 295).

Appeal from Circuit Court, Mercer County.

Suit by J. B. Mills and others against Johnston McLanahan and another.   From a decree for plaintiffs, defendants appeal.

*Affirmed.*

*C. W. Smith,* for appellants.

*Hale & Pendleton* and *Sanders & Crockett,* for appellees.

MILLER, JUDGE:

In the decree appealed from, the court below decreed that plaintiffs and other heirs at law of Robert Mills, deceased, were entitled to specific execution of the contract of sale of the one thousand acres of land proven to have been made in 1866, by John R. Dunlap, administrator *de bonis non* with the will annexed of Robert McCulloch, deceased, to said Robert Mills, and particularly described in the decree, by metes and bounds, according to a plat and survey thereof, made by Stinson, surveyor, in 1874, filed in the cause. And being of opinion that the defense of innocent purchasers set up by said defendants, Johnston McLanahan, as administrator *de bonis non* with the will annexed, of said Robert McCulloch, deceased, and in his own right, and by Ephemia P., Marcia P., and Emma P. Moore, in their own right and as trustees, and by Robert M. Henderson, trustee, was not sustained, and that they held the legal title to said land for the benefit of the heirs at law of said Robert Mills, and that the purchase money for said land had been fully paid, and that said heirs at law were entitled to have said land conveyed to them, the court further decreed that the said defendants as individuals and fiduciaries aforesaid, do within thirty days from the date of the decree, by apt and proper deed with covenants of special warranty of title, convey the said one thousand acres to said children and heirs at law of Robert Mills, deceased, to be held by them in such interests and proportions as the law prescribes, and deposit the same in the clerk's office of the court, and upon default thereof that the commissioner thereby appointed convey the same to them as therein directed.

Many points are raised and elaborated in the briefs and arguments of counsel; but after careful consideration thereof, and a review of the pleadings and proofs we conclude that but four questions are fairly presented, and that a proper response to these will substantially dispose of all the errors assigned and relied on by appellants.

The first is, was there in fact such a contract as is al-

leged, describing the land sold, sufficiently accurate for identi-
fication, and as entitles plaintiffs to specific execution thereof?
Though denied in the answer no serious question of the au-
thority of Dunlap, administrator, to make the contract, is pre-
sented. The will of Robert McCulloch proven in the cause fully
authorized his executor to sell and convey a tract of 35,500
acres of which the land in controversy is a part. Defendants
themselves purchased from Dunlap's successor, and the title of
both parties goes back to a common source.

The immediate parties to the contract are and were at the
date of the suit both deceased; but the existence of a contract
between them is proven by reference to it in the original receipt
given by Dunlap to Mills, December 5, 1866, for four hundred
dollars, reciting it as the first "payment upon a tract of land
sold said Mills out of the McCulloch tract of 35,500 acres ly-
ing in the County of Mercer," and further reciting that "said
tract sold is to contain one thousand acres and to be run in
accordance with a contract in writing held by said Mills, exe-
cuted some time in the year 1866." Besides this receipt, its
existence and contents are proven with more or less accuracy,
by four or five living witnesses, who saw the contract and either
read it or heard it read, three of them wholly disinterested,
including French, the attorney in whose hands it was placed
for suit sometime between 1876 and 1897, time not more defi-
nitely fixed, and by whom it was lost, Foley, for many years
a nearby neighbor, and Stinson, the surveyor, employed by
Dunlap in 1874 to survey out and plat the thousand acres
called for in the contract. While these witnesses do not ex-
actly agree in all the details they substantially agree as to the
terms of the contract, and prove the same with such substan-
tial and sufficient certainty as to call for its specific execu-
tion. The oral testimony as to the description of the land
called for in the contract is sufficiently definite; besides the
survey of the land by Stinson, surveyor, in 1874, by the direc-
tion of Dunlap, which is definite and accurate, fully identified
the land surveyed on the ground, and if competent, fully identi-
fies the land intended to be sold, and nothing more is required.
This plat and survey was procured with a view to making a
deed to the heirs of Mills. And Stinson proves the acknowledg-

ment by Dunlap, at the time he employed him to make the survey, that all the purchase money had been paid by Mills.

Are the plat and survey made by Stinson, objected to, legal and competent evidence? Appellants contend they are not. The evidence of Stinson is that he delivered this plat and survey to Douglass, Dunlap's attorney; and they were by some one turned over to Mrs. Mills, or the heirs of Robert Mills, and were produced by them in evidence. They claim to have held possession under and according to contract, and this plat and survey, continuously ever since. High authority is found holding that "a practical location of the premises intended pursuant to the agreement is, in many cases, sufficient to give the requisite definiteness to a contract otherwise defective," and that "it will, as a rule, be held sufficient if the property intended to be conveyed can be identified by evidence properly admissible." 26 Am. & Eng. Enc. Law, (2nd. Ed.) 36, citing *Dewey* v. *Spring Valley Land Co.,* 98 Wis. 83, and *Lundgreen* v. *Stratton,* 73 Wis. 659. In *Norman* v. *Bennett,* 32 W. Va. 614, the land sold was, by direction of an agent, run off and platted by a surveyor, and this Court observes: "It must be presumed, that this land was run off to said James J. Norman by Marshall about the time the agreement was made, and Norman took possession of the land then pointed out and designated by Bennett through his agent, Marshall, and after said tract of land was so laid off and accepted by James J. Norman, the survey became a part of the contract, and Norman could not claim beyond its limits."

But are the plat and survey otherwise legal and competent evidence? An objection to them is that at the time Dunlap, administrator, in 1874, is proven to have ordered the survey, his powers and authority had been revoked, and his successor appointed by the circuit court in 1867. Three answers are replied to this proposition: First, that Dunlap's appointment was by the Recorder of the county, and that as the law then was, the circuit court had no probate jurisdiction; and no authority to revoke or annul letters of administration; second, that if the authority of Dunlap was legally revoked and a successor legally appointed, he continued as the agent of his successors, and claimed to have authority in the prem-

ises, and is proven by defendants by competent evidence to have been in fact the agent of McClellan, administrator, his successor, in 1874, the same year he employed Stinson to make the survey and plat of the Mills land, and that he so acted and was recognized as his agent. Strengthening the claim of agency the record shows that Dunlap became and was surety on the fiduciary bond of McClellan, his successor, appointed in 1867; third, that the successor of Dunlap, administrator, was bound by the acts of the latter while exercising his fiduciary office, and was bound to carry out and fulfill his contracts of sale, and that having through Dunlap as agent run out and platted the land he and his successors are bound for fulfillment of the contract of sale.

Much is said and many authorities cited in support of these propositions, but as we think the agency of Dunlap and his authority to have ordered and directed the survey and plat of Stinson fully established, no other reason for holding the survey and plat legal and competent evidence need be given, and we will not go into the other questions presented. *Norman* v. *Bennett, supra,* we regard authority for the admissibility and competency of the survey and plat of Stinson. So we are of opinion that the contract, and its contents, have been sufficiently established and the land sold so definitely located as to entitle plaintiffs to specific execution so far as these facts have to do with the question.

The next question is, has it been clearly proven that the purchase money was all paid? We think it has. The court below so found, and we can not say its finding is wrong. There are slight discrepancies in the evidence of the witnesses, as to the amount of the purchase money, but none as to the fact of payment. The bill alleges, one thousand dollars as the amount of the purchase money, and that four hundred dollars thereof, evidenced by the receipt of Dunlap, administrator, had been paid; but plaintiffs were not fully advised whether the residue had been paid or not, but if not they stood ready to pay the balance, and proffered the same into court. An amended bill alleged discovery since suit brought that the entire sum had been paid, and charged the fact to be as discovered. French, the attorney who lost the contract or title bond, swears

that the consideration recited in the contract was one thousand dollars, and that receipt of six hundred dollars thereof was acknowledged therein. This statement, however, is not entirely in harmony with the language of the receipt of December 5, 1866, which, as already indicated, describes the four hundred dollars paid, as the first payment; however, we have the positive evidence of Stinson, the surveyor, that Dunlap, administrator or agent, as he may be regarded, admitted to him in 1874, at the time the survey was made that the purchase money had all been paid. We regard this admission as administrator or agent, under all the facts and circumstances, legal and competent evidence. It is not likely that Mills would have paid four hundred dollars, and not paid the balance. At least defendants offer no evidence in rebuttal of the evidence of plaintiffs and we think the fact must be regarded as fully established. Moreover, the law is, that after twenty years, there is a presumption of payment. *Roush* v. *Griffith,* 65 W. Va. 752; *Seymour* v. *Alkire,* 47 W. Va. 302; *Calwell* v. *Prindle,* 19 W. Va. 604, 640.

The third question is, were Moore and McLanahan innocent purchasers without notice of plaintiffs rights? It is conceded that none of the papers under which plaintiffs claim were ever recorded so as to give constructive notice to subsequent purchasers. Plaintiffs rely solely on actual notice imputed to McLanahan, administrator, &c., of McCulloch, as the successor of Dunlap, and upon the fact of actual possession begun by their father Robert Mills, and by his tenants, and after his decease in 1870-2, continued by his heirs and tenants down to the date of this suit. McLanahan deeded to Moore, July 24, 1884, according to the recitals in the deed, "the whole of the unsold land," describing it by metes and bounds, as "being the rest and residue of the tract of land belonging to the estate of Robert McCulloch, deceased." Notwithstanding these recitals in the deed, it is conceded, that the boundary described is inclusive of the thousand acres claimed by the plaintiffs, and if the defendants are innocent purchasers without notice, as they claim, they would be entitled to the land, as covered by the deed to Moore under which they claim. McClanahan, who conveyed to Moore as administrator, acquired a one half undi-

vided interest in the tract conveyed, by deed from Moore of March 13, 1897, and it is claimed by plaintiffs that conceding Moore to have been an innocent purchaser, McLanahan, as purchaser from him, would not be protected as an innocent purchaser, with notice of their rights imputed to him, as administrator, selling and conveying the land to Moore, in 1884. But if both Moore and McLanahan were charged with notice of the plaintiffs rights by their actual possession and occupancy of the land, as is claimed, we need not trouble ourselves about the relative rights of Moore and McLanahan, due to the notice imputed to McLanahan, as administrator, successor to Dunlap.

The crucial question then is, did Robert Mills, his heirs and tenants under him, in 1884, have and hold such possession, under the contract from Dunlap, as to put the purchasers on notice of their equitable rights? The court below by its decree found that they did. After a careful review of the evidence, without taking time to recite it in detail, our conclusion is, that actual possession and occupancy of the land, first by Robert Mills and by his tenants, continued during his life, and after his decease by his son Hugh G. Mills, Jesse Monk and others. The evidence clearly establishes the fact, that there were some six several improvements upon the tract as surveyed by Stinson, designated in the record, as "Snead Place", "Clark Place", "Halstead Place", "Little John Snead Place", "Dock White Place", and "Hubbel Place." These were all occupied continuously, either actually or by cultivation and improvements, by Mills or his sons or other tenants, down to the time of the institution of this suit. One of the contentions of the appellants is, that as the evidence shows, Robert Mills, prior to his purchase of the land, in 1866, had bought out some squatter rights, and had previously occupied the land by himself or his sons, that had previously been in possession of these squatters, he cannot be said to have taken possession under his contract with Dunlap, or to have held possession by virtue thereof. We see no merit in this position. Though Mills may have purchased squatter rights, after he bought the land from Dunlap, administrator of McCulloch, thereby recognizing the superior rights of his vendor, he must in law be regarded as having taken and as holding possession under him. Accord-

ing to the evidence, most, if not all of these different places or improvements were much improved by the erection of buildings, planting of orchards, clearing and cultivation, by Mills and his heirs and tenants. They were certainly sufficient to put purchasers on notice of the rights of the occupants.

McLanahan professes to have gone over the land on several occasions before his sale to Moore, in 1884. Moore does not profess to have been upon the land, indeed his deposition does not seem to have been taken in the cause. The deed to him shows him to have been a resident of Pennsylvania. If either Moore or McLanahan had gone upon the land and made inquiry of Hugh G. Mills, Jesse Monk, or of any of the other occupants of the land, such inquiries would undoubtedly have led to a full disclosure of the rights under which this land was occupied, by Mills, his heirs and tenants. The law not only imposes the duty upon a purchaser to make such investigation, but imputes to him notice of all facts which such inquiry would have disclosed, and of all the rights of those in possession, depriving him of the defense of an innocent purchaser. *Frame* v. *Frame,* 32 W. Va. 463; *Ellison* v. *Torpin,* 44 W. Va. 414, 436, 440, 442; *Weekly* v. *Hardesty,* 48 W. Va. 39, 44; *Marshall* v. *Hall,* 51 W. Va. 569, 577, 578, 580; *Nutter* v. *Brown, Id.* 603, and other cases, digested in 13 Cyc. Dig. Va. & W. Va. Reports, 598.

The fourth and last question is, are plaintiffs barred by laches, or lapse of time? Our decisions say no. They hold that the defense of laches will not avail a defendant in a suit for specific performance of a contract, where the vendee, his heirs or assigns, are in possession, acquired under the contract, though many years may have elapsed between the date of the contract and the time of the suit for specific performance. The following authorities affirm the proposition, as well as illustrate its application: *Marling* v. *Marling,* 9 W. Va. 79, 99; *Abbott* v. *L'Hommedieu,* 10 W. Va. 678, 711, 712; *Steenrod* v. *Railroad Co.,* 27 W. Va. 1; *Norman* v. *Bennett, supra; Weekly* v. *Hardesty, supra; Nutter* v. *Brown, supra; Ratliff* v. *Sommers,* 55 W. Va. 30, 44; 2 Minor's Inst. (4th Ed.) 892, 893; 18 Am. & Eng. Ency. Law, 125; 2 Lomax Dig. 103; Fry on Specific Performance, 530, 531; 23 Am. & Eng. Ency.

Law, 498, 516, 523; *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417; *Ruckman* v. *Cory,* 129 U. S. 387.

Perceiving no error in the decree we must affirm it, with costs to the appellees incurred in this Court.

*Affirmed.*