# CHARLESTON.

THOMAS v. ANDERSON *et als.*

Submitted May 11, 1915.    Decided June 8, 1915.

1. FRAUDULENT CONVEYANCES—*Right to Enforce Trust.*

    Where land is conveyed to another without consideration, to hold in trust for the grantors, and with the intention of thereby preventing the same from being subjected to a threatened claim for damages, and it turns out that there was no such claim, and that the grantor had no creditor entitled to subject the land to the payment of a debt, equity will enforce the trust notwithstanding the purpose of the parties in making such deed. (p. 498).

2. CONTRACTS—*Effect of Illegality—Fraudulent Conveyances.*

    If one of the parties to such fraudulent conveyance by allegation and proof of only a part of the facts constituting the transaction is able to make out a prima facie case for recovery against the other party, the defendant's guilty participation in the fraudulent transaction will not preclude him from proving as matter of defense the illegal part of the contract. (p. 502).

Appeal from Circuit Court, Jackson County.

Suit by George C. Thomas against Eliza Anderson and others. Decree for plaintiff. Defendants appeal.

*Reversed, and bill dismissed.*

*W. F. Boggess* and *Ryan & Boggess,* for appellants.

*Elmer L. Stone* and *David A. Cronin* and *John M. Baker,* for appellee.

MILLER, JUDGE:

The decree appealed from awarding the relief prayed for by the bill, and denying the defenses pleaded in the several

answers, adjudged that the deed of June 21, 1899, between plaintiff and defendant Esther Thomas to defendant Eliza Anderson, for eighty-seven acres of land, was duly executed and delivered to and accepted by the grantee on the date thereof, and that the two notes bearing the same date for the sum of two hundred dollars each, signed by the grantee, in the name of Eliza Aplin, payable to the order of said Esther Thomas, with interest from date, and due and payable in thirty and sixty days from date respectively, were, prior to the institution of this suit, for a valuable consideration, assigned and transferred to plaintiff; that a vendor's lien on said land was retained in said deed to secure the payment of said notes, and that plaintiff is entitled to enforce said lien against said tract by reason of being the owner and holder of said notes secured thereby, and that plaintiff was entitled to recover of said Eliza Anderson the principal of said notes and interest, amounting to the sum of $721.00. And accordingly it was further decreed that plaintiff recover of the said Eliza Anderson the said sum of $721.00, with interest and costs; and that defendant Nita Evans took and holds said tract subject to said vendor's lien, and to the rights of plaintiff thereunder, and that said lien constituted a valid, binding and subsisting lien against said land; and also that unless said Eliza Anderson, Esther Thomas, or Nita Evans, or some one for them, should pay to plaintiff the sum so decreed, the special commissioner thereby appointed should sell said land upon the terms, and as thereby directed, to pay and satisfy said decree.

The proof in accordance with the allegation of the bill and answers shows that the land decreed to be sold was conveyed to defendant Esther Thomas, then Esther Waybright, by her father W. H. Alpin, by deed of June 19, 1885; that subsequently, on May 6, 1903, her father conveyed to her another tract of three hundred and ninety acres, which included the eighty-seven acre tract, and which land she, subsequently, on October 28, 1908, leased to the Carter Oil Company, for oil and gas; and that on February 9, 1909, she conveyed to her daughter, the defendant Nita Evans, one hundred and eight acres out of said larger tract, and which also included said eighty-seven acre tract.

Plaintiff and defendant Esther Thomas, as the pleadings and proofs show, were married November 10, 1895; they separated about June 17, 1907, and in April, 1909, she obtained against him a decree of absolute divorce; they lived together as husband and wife on said land prior to June 21, 1899, and 'for many years thereafter, and until their separation, in 1907, except for a very short interval, and after that and until she conveyed the land to her daughter, the said Nita Evans, she continued to occupy the same, paying all the taxes thereon, and at no time did the said Eliza Anderson, the pretended grantee, ever have possession thereof, or claim any right, title or interest therein by reason of said deed, or otherwise.

The several defenses to the bill and the relief prayed for, as presented by the answers and proof thereon, were: First, that the alleged deed of June 21, 1899, to and purporting to secure the alleged notes of Eliza Anderson, was made at the suggestion, if not the procurement, of plaintiff, then the husband of Esther Thomas, and in which he joined, for the purpose of putting the land beyond the reach of Starcher Bros., who, as she may have heard, and as represented to her by plaintiff, were threatening to give her trouble on account of a certain timber contract with her; that both agreed, after consultation with the grantee, Mrs. Anderson, to convey the land to the latter taking her notes, all to be held by the grantors, without any obligation on her part to pay said notes, and the land to be re-conveyed by her to Esther Thomas, as soon as it should be ascertained that Starcher Bros., who in fact had no claim against Mrs. Thomas, was found to have no demand against her, and that plaintiff having procured and participated in the fraud was precluded from asserting any rights by assignment or otherwise in said notes or in the deed, or in the alleged lien securing the same; second, that both deed and notes were wholly without consideration, and that neither were made, executed or delivered with the intent or purpose of binding the parties thereby, but solely for the purposes stated in the first ground of defense, and that never since the said transaction had possession of said land been changed, or payment of the notes demanded by any one, until the institution of this suit, and laches of plaintiff were pleaded

and relied on; third, that said notes were never endorsed or assigned by said Esther Thomas to George C. Thomas, nor was any consideration paid or given by him therefor, but his possession thereof was obtained without authority, at the time the deed and notes were so executed, by his taking them from the table where signed, and that never until after he and his wife had separated and she had obtained her decree of divorce had he made any claim thereto, and that at no time from the date of said notes, June 21, 1899, to the date of the suit, September, 1909, more than ten years, had he ever demanded payment of said notes upon said Eliza Anderson, or any one else connected therewith. And Mrs. Thomas swears positively that some time before she and plaintiff separated, she inquired of plaintiff about said notes and deed and that he assured her they had been long ago destroyed.

Disposing of these defenses in the inverse order stated, the only evidence supporting plaintiff's claim to the notes is the fact of his possession of them, and his uncorroborated testimony that they had been assigned to him by his wife in payment of an alleged claim for money paid for her use, etc. She flatly denies any indebtedness to him, and says that while he may have paid out some money for her, it was either out of her funds or that she had reimbursed him therefor; that at no time did he ever until this suit make any claim of indebtedness against her, that he had taken all her vouchers, checks, etc., and she was unable after so long a time to give full account of the transactions. While Thomas pretends that he had an agreement with his wife before the deed to Mrs. Anderson that the latter's notes were to be transferred to him, this is denied by Mrs. Thomas, and he does not pretend to have ever had a settlement with Mrs. Thomas for money claimed to have been paid on her account; he admits having received some money on her account, but makes claim that he accounted to her for it. As between plaintiff and his wife regarding these notes, according to the former's testimony, the whole transaction, including these notes, took place at one and the same time. And all that any of the witnesses to that transaction say concerning the notes is that after they were signed by Mrs. Anderson, that Mrs. Thomas endorsed the notes while they still laid on the table, and that plaintiff then

picked them up along with the deed and carried them off. Mrs. Thomas swears that she never endorsed the notes, that her name on the back of the notes is a forgery. On this question the evidence is conflicting. But if she did in fact endorse them the other evidence satisfies us beyond doubt that her endorsement was not for the purpose of assigning them to plaintiff on account of or in payment of any claim he had against her. This compelling evidence is that no possession of the land conveyed was ever delivered to Mrs. Anderson, but plaintiff and his wife continued for most of the time to reside on the land and to use the same, paying the taxes, claiming it, dealing with it and treating it as her land; and though plaintiff had the deed recorded, Mrs. Thomas and Mrs. Anderson swear it was without authority. He never had the land transferred to Mrs. Anderson on the land books for taxation, nor did he or his wife ever pay any rent to Mrs. Anderson, make any demand on her for taxes paid, nor until this suit was any demand made upon Mrs. Anderson for payment· of the notes. In the mean time the land had been leased for oil, and part of it sold and the rights of other parties become involved therein. Besides all this plaintiff's own confession, given in his evidence in chief, is that he at least consented to, and even participated in the sham to defraud Starcher Bros., out of an alleged claim he reported to his wife they were about to make against her. He knew that he and his wife were not making a bona fide sale of the land to Mrs. Anderson, and he well knew that Mrs. Anderson was not to pay the notes signed by her. If he had had a valid claim against his wife he would not have accepted these notes in payment; if he did why did he wait all the succeeding years, and until after his wife had divorced him before asserting right and title to the notes or attempting to enforce the lien reserved in the deed?

That plaintiff's assertions of right and title to these notes was all an afterthought, conceived after his wife's decree of divorce against him, and for the purpose of obtaining an unjust and unconscionable advantage of her and her sister and daughter, the evidence satisfies us beyond any doubt whatever. The admitted facts, speaking louder than any words of the witnesses, can be reconciled on no other reasonable theory.

Not even can the conduct of plaintiff be accounted for on the theory of kindly indulgence to a delinquent relative; indeed he excuses himself for his delay on the ground that he wanted to allow all the interest that was possible to accumulate on the notes.

On the second ground of defense, assuming lawful title and right to the notes in plaintiff, the defense of laches would perhaps not be available under the circumstances of this case. But the decision of this point is not necessary to the proper disposition of the case. And if the deed was delivered and the notes executed and delivered as the court below, we think, might reasonably have concluded from the evidence, and with the intent to pass title, the deed was good consideration for the notes and the notes for the deed, and there would have been no lack of consideration for either. But as indicated the evidence satisfies us that the whole transaction was a sham resulting and growing out of the fear of the grantors that Starcher Bros. might attempt to assert some claim for damages against Mrs. Thomas, but which they in fact did not do, and the evidence of a member of the firm is that he knew of no such claim, and, so far as he knew, that none had even been made or asserted against Mrs. Thomas.

It is now manifest that the defense must rest mainly on the potency of the first ground alleged. And this defense involves two propositions, the first, that Starcher Bros., who occasioned the fear of plaintiff, communicated to his wife, were not in fact creditors, and never made any claims as such, and never reduced any such claim to judgment against Mrs. Thomas; second, that whatever fraud was committed by the parties to the deed and notes was participated in by plaintiff, and that defendants are not precluded thereby, as against him from pleading the fraud in defense of his suit upon the only part of said transaction remaining executory, namely, the notes and the pretended lien reserved securing the same.

The first of these propositions finds ample support, we think, in the principles enunciated in the recent case of *Criss v. Criss*, 65 W. Va. 683, opinion by Judge BRANNON. In that case the court held that: "A conveyance of land to be held in trust for a third person, the grantee and beneficiary intend-

ing by putting it in the hands of the grantee, to shield it from imaginary liability which the beneficiary feared might be attempted to be asserted, based on forged papers which the parties feared were in existence, when in fact there were no such papers, and no such liability, and the beneficiary owed no debts, will not be held void under the statute avoiding deeds made with intent to defraud creditors, and the trust will be enforced in equity.'' So that upon the principles of this case, which we think applicable here, even if this was a suit by Mrs. Thomas against her sister Mrs. Anderson, to enforce the trust attempted to be created in her, the defense of fraud would not avail her.

But assuming fraud, as contended by plaintiff, in the making of said deed and the procuring of said notes, is Mrs. Thomas to be denied the defense that he participated therein and is now claiming to enforce an alleged contract originating in the same transaction, and according to his claim, an integral part thereof? The position of plaintiff's counsel is that because he was not obliged to do so and did not, in order to present a prima facie case, plead his fraud, or the fraud of either of the other parties to the transaction, the mouths of defendants are hushed while he proceeds in a court of conscience to obtain the benefit of his own fraudulent conduct, and to rob his wife, or the one who was his wife, out of the estate obtained by her from her father. The equitable rules and principles invoked for the proposition lead to no such inequitable and unjust conclusions. In the recent case of *Lanham* v. *Meadows,* 72 W. Va. 610, the first point of the syllabus, we held that: ''If a party to an illegal agreement, by proof of part of the facts constituting the transaction out of which it grew, make a prima facie case for recovery against the other party, without disclosing the illegality, the defendant's guilty participation in the transaction does not preclude him from proving as matter of defense the illegal part of the contract.'' We think the principles of that case, and the authorities cited in support thereof, ought to control this case and that as plaintiff is seeking relief upon a transaction admitted by him to be fraudulent, and as precluding defendants, they may show the whole transaction and his participation therein, as a complete defense to his suit to enforce payment

of the alleged notes and to enforce the alleged lien retained in said deed.

For the foregoing reasons we are of opinion to reverse the decree, and enter such decree here as we think the court below should have entered, dismissing the bill with costs to appellants in this court and in the court below in this behalf expended.

*Reversed, and bill dismissed.*