JAMES TIEDEMANN, Respondent, *v.* MARIA TIEDEMANN, Defendant, Impleaded with WILLIAM FISHER and RUTH C. FISHER, Appellants.

Second Department, June 9, 1922.

Husband and wife — real property — action by husband against wife and her grantees to cancel deed and compel reconveyance — property originally occupied as home by husband and family — husband conveyed property to wife, without valuable consideration, on her oral agreement to reconvey, because of possibility of negligence action against him — wife separated from husband and sold property hastily to other defendants, who had knowledge of circumstances, for less than value — no evidence that husband by transfer divested himself of all his property — judgment for plaintiff proper.

In an action to cancel a deed to real property and for a reconveyance to the plaintiff, a judgment in favor of the plaintiff should be affirmed, where it appears that the plaintiff formerly owned the property and occupied the same as a home for himself and family; that with a view to saving the home from a judgment in a possible negligence action he transferred the property to his wife without

valuable consideration, and upon her oral agreement that she would reconvey the property at any time he so desired; that, after the conveyance, the plaintiff paid the taxes and insurance on the property, built a barn and made other improvements to the premises and continued to live thereon down to the date of the trial; that the plaintiff's wife separated from him after receiving the deed to the property and later sold the property to the other defendants in the action, who were chargeable with knowledge of the circumstances, for a sum considerably less than its actual value; that there is no evidence that, by making the transfer to his wife, the husband divested himself of all his property; that he never conceded that he was responsible for the accident out of which the possibility of the negligence action arose; and that in fact such action never was brought nor was any claim made that plaintiff was responsible for the accident.

BLACKMAR, P. J., and JAYCOX, J., dissent.

APPEAL by the defendants, William Fisher and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 13th day of June, 1921, upon the decision of the court rendered after a trial at the Queens Special Term.

The plaintiff is the husband of the defendant Maria Tiedemann, and brings this action to cancel a deed of property at Queens, L. I., made by his wife to the defendants Fisher, dated December 8, 1920, and to compel her to reconvey the property to plaintiff, upon the ground that the wife held the title to the property for him, under oral agreement to reconvey upon plaintiff's request. That having deserted him, having left the premises which constituted the family home, without notice to him and in violation of her agreement she sold the property to defendants Fisher for $2,500 ($1,000 cash and $1,500 mortgage), when the fair value of the property was $4,000. And plaintiff alleged in the complaint that the Fishers, at the time they purchased the property, had full knowledge of the trust agreement. The defendant wife did not answer, but there is no evidence in the case, or suggestion, that she is acting in sympathy with her husband. At the date of the trial she was still separated from him and appeared by an attorney opposing plaintiff's claim.

The plaintiff testified that in 1918 he owned the property where he resided with his wife and two children. He was engaged in trucking for the city. In that year he met with an accident, his truck was in collision with a Long Island railroad train and he was injured. A boy who was on the truck with him was killed. Plaintiff made a claim for damages against the railroad company. They settled with him for $1,500, which sum he gave to his wife. But there was some talk of the boy's parents suing him, Tiedemann, for damages for the boy's death. He says he talked the matter over with his wife, and with the object of saving his home for himself, his wife and children, against a possible judgment, he

transferred the house to his wife on her oral agreement that he might have the property back at any time he wanted it. There is no evidence that by this transfer he divested himself of all of his property. He still had his trucks and horses and contracting business. As matter of fact no claim was made and no action was ever commenced against him by the parents of the boy. After the deed to his wife, he paid the taxes and insurance on the property, built a barn of the value of $1,200 on the premises and kept the property in repair. He made other improvements and continued to live on the property down to the date of the trial. All of the expenditures were made out of his own money. His wife lived with him in the premises to November, 1919. In June, 1920, the place was worth $4,000. He knew nothing of the sale of the property to the Fishers until after the deed was delivered, when he received a notice from Fisher demanding possession at once. He had known defendant Fisher for fifteen years. Fisher lived in Queens, two blocks from plaintiff. Mrs. Tiedemann was called as a witness on the defense, and examined by her own attorney, Mr. Herzog, admitted receipt of the deed from her husband in 1918. She says there was no discussion at the time about the automobile accident.

Her testimony is that, living apart from her husband, she met her neighbor Fisher on a trolley car on the 5th of December, 1920, and Fisher having mentioned the fact that he had to move from his then residence and was thinking of buying a place, she offered to sell him the house in question for $2,500. Fisher said, apparently at once, that he would buy it — and the next day, December sixth, she went to Lawyer Ashmead's office and met Fisher and received $100 on account of the purchase. No contract was drawn, " just a slip of paper," which was not produced. And on December eighth, two days later, she went to Ashmead's office, received $900 in cash and a purchase-money mortgage for $1,500, and delivered a deed of the property to William J. and Ruth C. Fisher. She admitted that she did not consult her husband or give him any information about the sale. The defendant Fisher was in court at the trial. He did not take the witness stand nor did he offer any evidence against plaintiff's claim. There is no contradiction of plaintiff's evidence that at all times he was in possession of the property.

*Henry C. Frey* [*Elmer J. Ashmead* with him on the brief], for the appellants.

*Charles H. Street* [*Rawdon W. Kellogg* with him on the brief], for the respondent.

KELLY, J.:

The learned trial justice decided in favor of plaintiff. (115 Misc. Rep. 462.) He found the agreement by the wife to reconvey, continued expenditure by plaintiff for taxes and repairs, insurance, etc., that the value of the property was $4,000. He found that when Fisher bought the property in December, 1920, he knew that plaintiff was separated from his wife and that he was in possession of the premises. He found that Fisher and his wife were not innocent purchasers and that they were chargeable with notice of the trust agreement. He decreed that plaintiff was the owner of the property, that the deed from the wife to the Fishers should be canceled and that Mrs. Tiedemann should reconvey the property to the plaintiff. And the judgment so provided. Nothing is said in the findings or judgment about Mrs. Tiedemann returning the $1,000 to the Fishers, but the Fishers made no request for such judgment and made no point about it. The case contains no exceptions to the findings made by the learned justice. The defendant Mrs. Tiedemann does not appeal from the judgment.

I think the judgment was right. The sufficiency of the oral agreement to reconvey is not attacked by the defendant on the record. Appellants' argument is that no fraud was shown on the part of Fisher, that there was no proof of inadequacy of consideration and that the decision is against the evidence.

The plaintiff's possession of the property was notice of his claim of title to Mr. Fisher (*Phelan* v. *Brady,* 119 N. Y. 587), and there is abundant evidence to sustain the finding of the learned trial justice that in this rural community in Queens, the conditions existing between the plaintiff and his wife were known to his near neighbor of fifteen years' standing. The insufficiency of the consideration paid, the haste with which the transaction was closed and the absence of explanation by Mr. Fisher, who was present at the trial, justified the finding of the learned justice that Mr Fisher was endeavoring to take advantage of the dispute between husband and wife to get the family home at much less than it was worth without consulting the husband.

But my brethren who dissent think that the plaintiff cannot have relief in equity because he made the deed to his wife for the purpose of hindering, delaying and defrauding his creditors. (See *Simis* v. *Simis,* 146 App. Div. 655; *Lynch* v. *Jones,* 179 id. 613.) It seems to me the answer to this is that there is no evidence that the plaintiff had any creditors at the time he made the deed to his wife, or at any time, nor is there evidence that by making the deed in question he divested himself of all his property. On the evidence in the case he was still entirely solvent. He had his

contracting business and plant and it is evident that he was in funds because he continued to improve the property and to expend money on it. Apparently the railroad company acknowledged its responsibility for the accident in which the boy was killed who was riding on plaintiff's truck. There is no suggestion that the boy's parents ever made claim that plaintiff was responsible for the occurrence or that he owed any money to the next of kin of the deceased boy. It is suggested that as the next of kin of the boy were potential creditors, they might have presented a claim, and that Tiedemann had this in mind when he made the deed and that he intended to remove the property from the lien of any judgment which might be recovered. But I think this is going too far. Tiedemann never conceded that he was responsible for the accident. On the contrary, he preferred a claim against the railroad company and collected damages. If he feared a lawsuit I see no justification on the evidence for the inference that he was endeavoring to defraud any one. There is no evidence of any debt or liability on his part, and the objections of my dissenting brethren are based on the inference that there was a debt, and secondly on the inference that if there was a debt he was endeavoring to avoid it. None of the decided cases go to this extreme. If there are in fact debts and obligations and the debtor divests himself of property to avoid payment, it may be that he cannot recover it in equity, but that is not this case. In the countless cases where a man takes title to his home in his wife's name, or transfers the home to his wife so that she may have shelter for herself and children, if we go into the mental operations of the husband and father we may find that the transfer was made to protect the family against the vicissitudes of business operations and the like, but I have never understood that such transfers were barred by the law or by considerations of conscience and fair dealing. I think the judgment was right and that it should be affirmed.

RICH and YOUNG, JJ., concur; BLACKMAR, P. J., and JAYCOX, J., dissent on the ground that a court of equity will not relieve the plaintiff from a conveyance made with intent to hinder and delay creditors.

Judgment affirmed, with costs.