314 S.E.2d 176

**Nelson R. BAILEY, Jr., et al.,**

v.

**J.D. BANTHER.**

**No. 15759.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Dissenting Opinion March 2, 1984.

D. Grove Moler, Mullens, for appellants.

Harlen Ray Tiller, Oceana, for appellee.

HARSHBARGER, Justice:

The Wyoming County Circuit Court ordered J.D. Banther to be evicted from a certain plot of land and found $4,000 damages against him for unlawful detention of the property, which was titled in Nelson and Mary Jane Bailey. Banther appeals.

J. Dillard Banther, Sr. allowed J.D., his son, to build a simple shelter on a two and one-half acre tract in Lilly Haven, Oceana District, Wyoming County, West Virginia, to house J.D., his wife and son. In 1968, after he was divorced and remarried, J.D. negotiated with his father to purchase the land for $365, and paid $165 down.[1] At that meeting it was decided that the deed would be made from J. Dillard Banther, Sr., and Eliza, his wife, to J.D.'s seven-year-old son, Mark Evans Banther, to protect the property from claims of J.D.'s first wife and his creditors.

The next day Dillard, Eliza, and J.D.'s sister Louise, went to an attorney who drew the deed to Mark. It recited ten dollars consideration.

J.D. testified that he asked his father to deed the property to his son because his first wife, after she had him confined to Weston State Hospital, lived in his house

---

1. Testimony by Banther and his second wife, Janice, revealed that this money was contributed by Janice from her father's estate when he died.

and ran up bills about which he had no knowledge. There is nothing in the record to indicate for what or for how much the bills were, except one specifically mentioned was for thirty-five dollars.

J.D., his wife Janice, and their children have lived on the property continuously since, and improved it. Mark, however, moved in with his Aunt Louise before his father remarried, and stayed with her afterwards, although he visited in his father's house occasionally for a few days at a time. His Aunt Louise and his father, J.D., were neighbors. When he was thirteen or fourteen, the Welfare Department removed Mark from his father's legal custody [2] and awarded his custody to his Aunt Louise. Mary Jane Bailey, Louise's daughter, lived there too and testified that she and Mark were raised as brother and sister. When Mary Jane married, she and her husband, Nelson Bailey, bought a used trailer and moved on another lot adjacent to her mother, Louise.

In February, 1981, prior to his eighteenth birthday and during his senior year in high school, Mark gave his father and stepmother an eviction notice. Then he got in trouble for using drugs, his Aunt Louise called the Welfare Department, and it took him from Louise and sent him to a home. While he was there, he contacted his father and stepmother to help him get back home, telling them to forget the eviction. Louise, however, was convinced to take him back in.

J. Dillard Banther, Sr. died in April, 1981, one month before Mark became 18. When Mark became eighteen, he deeded his property where his father, step-mother and their family had lived since he was a toddler, to his cousin Mary Jane and her husband, Nelson, in exchange for their lot and trailer. This transaction involved two separate deeds and cited no consideration other than familial ties. After Nelson and Mary Jane saw an attorney in their attempt to evict J.D., a deed of correction was recorded that illustrated the exchange of properties was each deed's consideration.

Mark moved out of his aunt's home after this property exchange, next door into his new property that was still occupied by Nelson and Mary Jane, and those three (plus a Bailey baby) shared the Bailey's mobile home for five months until the arrangement became unbearable. The couple introduced into evidence five rent receipts, numbered 001–005, from May, 1981, through September, signed by Mark, for $200 each. These are part of the damages they allegedly suffered because of J.D.'s continued possession of the place that Mark had conveyed to them. In October the Baileys moved, renting an apartment for $160 per month. Six months later, they moved again. At the time of trial, they had paid three months' rent there at $200 per month. Their rent receipts totalled $2,560, and their other damages were for J.D. causing them inconvenience and aggravation.

The trial court concluded that J.D.'s evidence did not overcome the presumption that there was a gift from him to Mark, and the Baileys were purchasers for value without notice and entitled to the property.

A property purchaser who has it conveyed to someone in his or her family, is presumed to have made a gift or an advancement of the property.[3] *Carter v. Walker*, 121 W.Va. 81, 1 S.E.2d 483, 484 (1939); *Edwards v. Edwards*, 117 W.Va. 505, 185 S.E. 904 (1936); Syllabus Point 2, *Deck v. Tabler*, 41 W.Va. 332, 23 S.E. 721 (1895); *Hamilton Co. v. Steele*, 22 W.Va. 348 (1883); Syllabus Point 1, *Lockhard & Ireland v. Beckley*, 10 W.Va. 87 (1877). This is a presumption of fact and may be rebutted by competent evidence. Syllabus Point 1, *McClintock v. Loisseau*, 31 W.Va. 865, 8 S.E. 612 (1888); Syllabus Point 3,

---

**2.** Trial testimony implied that Welfare took action after J.D. badly beat Mark.

**3.** If property is purchased by one person and deeded to a stranger, courts presume the property was deeded to the stranger in trust, and he or she is a resulting or constructive trustee.

*Watts Brothers & Co. v. Frith*, 79 W.Va. 89, 91 S.E. 402 (1917); Syllabus Point 5, *Currence v. Ward*, 43 W.Va. 367, 27 S.E. 329 (1897); Syllabus Point 1, *Deck v. Tabler*, 41 W.Va. 332, 23 S.E. 721 (1895). *Accord, Leonard v. Counts*, 221 Va. 582, 272 S.E.2d 190, 194 (1980).

*Deck v. Tabler*, 41 W.Va. 332, 23 S.E. 721 (1895); *Steagall v. Steagall*, 90 Va. 73, 17 S.E. 756 (1893); *Hamilton Co. v. Steele*, *supra*.

But where there is once convincing evidence to rebut the presumption, we can no longer treat it as a presumption raised by the law, but must go into the character and sufficiency of the evidence pro and con, as establishing his intention in that behalf at the time as a question of fact. *Deck v. Tabler, supra*, 41 W.Va. at 336, 23 S.E., at 723.

■■ J.D. and his stepmother, Eliza, were present when negotiations for the sale or gift were ongoing, and testified that J.D. purchased the property and that Mark was given legal title only to avoid creditors of J.D.'s first wife.[4] Equity makes courts reluctant to establish trusts in favor of those who transfer property to avoid creditors. But a deed to avoid creditors that may be voided by creditors, is valid between grantor and grantee. Syllabus Point 2, *McClintock v. Loisseau, supra*.

However, the equities are different when it turns out that the supposed claims were invalid, unproved, or illusory. *Wilcoxon v. Carrier*, 132 W.Va. 637, 53 S.E.2d 620 (1949), *overruled on other grounds*, 304 S.E.2d 312, 322 (1983); *Hall v. Linkenauger*, 105 W.Va. 385, 142 S.E. 845 (1928); *Criss v. Criss*, 65 W.Va. 683, 64 S.E. 905 (1909). If a grantor transfers property to another party to avoid invalid or imaginary claims, a court may still find that the grantee holds in trust for the grantor. *See* Annot., Rule Denying Recovery of Property To One Who Conveyed to Defraud Creditors as Applicable Where the Claim Which Motivated the Conveyance Was Never Established, 6 A.L.R. 4th 862 (1981 and Supp.); 37 Am.Jur.2d *Fraudulent Conveyances* § 113.

■■ In *Criss v. Criss, supra*, Mrs. Criss feared that people had forged her signature to certain notes that would be charged against her home. She purchased a home

and had it deeded to her son (and later to her other son) to avoid these illusory, but threatening, claims. Several years later when the matter of the claims was settled, she attempted to get her son to reconvey the property to her. He refused and behaved quite badly toward his other relatives about ownership of the property. Our Court decided that Mrs. Criss was entitled to the property and her son was only a trustee. Because the creditors she attempted to avoid were nonexistent, her original transfer was not fraudulent. *See also, Wilcoxon v. Carrier, supra*; Syllabus Point 1, *Thomas v. Anderson*, 76 W.Va. 496, 85 S.E. 657 (1915).

Other courts have found that if a conveyance was made to avoid creditors or potential liabilities, and the claims were not proved or asserted, the grantor could enforce his constructive or resulting trust against his grantee. *E.g., Estate of Blanco*, 86 Cal.App.3d 826, 150 Cal.Rptr. 645, 6 A.L.R.4th 850 (2d Dist.1978) (parent-doctor entitled to return of property conveyed to daughter to avoid potential malpractice judgment after doctor prevailed in malpractice action); *Mentzer v. Mentzer*, 325 Mo. 941, 30 S.W.2d 146, 148–149 (1930) (dictum); *Brady v. Ellison*, 2 Hayw 348 (N.C.1805) (a grantor who conveyed property to a grantee who agreed to reconvey it to the grantor or to grantor's children, had his property returned by the court after the litigation that precipitated the property transfer was resolved in his favor); *Hickey v. Ross*, 197 Okl. 543, 172 P.2d 771 (1946) (*see*, discussion p. 774); *Bobier v. Horn*, 95 Okl. 8, 222 P. 238 (1923) (dictum—even though this grantor conveyed to his son to avoid suit on a promissory note, the land was grantor's homestead and not subject to his debts, so its conveyance was not in fraud of creditors); *Evans v. Evans*, 180 Okl. 46, 67 P.2d 779 (1937) (the conveyance of a homestead to a son to avoid creditors cannot be a fraudulent conveyance because a homestead is not subject to claims of creditors—the unclean hands doctrine has no applica-

---

**4.** But, the trial court put more weight on the evidence that prior to Mark's reaching eighteen, his father attempted to purchase the property from him. He also noted that Mark was too young at the time of the transfer to assume the role of or intelligently participate in an arrangement that could have resulted in trustee accountability.

tion); *Webb v. Manifold Business & Investments, Inc.*, 261 Or. 276, 493 P.2d 726 (1972) (after transfer of property by landlords to tenants to avoid a tax lien that was later reversed on appeal, the court permitted the grantors to recover the property); *Cowles v. Cowles*, 89 Neb. 327, 131 N.W. 738 (1911) (a plaintiff got back property that he transferred to his mother to avoid payment of a judgment because it was his homestead and exempt from lien); *Hlista v. Altevogt*, 239 Md. 43, 210 A.2d 153 (1965) (the clean hands rule does not prevent a grantor from getting property that he transferred to his niece and nephew to avoid a potential suit by his brother-in-law); *Butte Investment Co. v. Bell*, 201 S.W. 880 (Mo.1918) (a husband and wife transferred their property to another to avoid threatened legal action against the husband, and the court found that the wife was not prevented from regaining it because she furnished the consideration for it and it was not in fraud of creditors); *Rossow v. Peters*, 277 Ill. 436, 115 N.E. 524 (1917) (plaintiff was permitted to recover land deeded to his son-in-law to avoid creditors because it was his homestead and statutorily exempt from creditors' claims); *Tiedemann v. Tiedemann*, 201 App.Div. 614, 194 N.Y.S. 782, *aff'd.* 236 N.Y. 534, 142 N.E. 273 (1922) (after an expected suit against him was not brought, a husband was entitled to return of his property that he deeded to his wife to avoid the potential judgment, even after she sold it to third parties); *Wantulok v. Wantulok*, 67 Wyo. 22, 214 P.2d 477, 21 A.L.R.2d 572, *reh. denied*, 67 Wyo. 45, 223 P.2d 1030, 21 A.L.R.2d 585 (1950) (a grantor's estate was entitled to property he conveyed to another to avoid purported indebtedness because it was his homestead and exempt).

There is no evidence here that any creditor moved against J.D., or that any actual liability or debt was established. We find that the presumption of gift was overcome by direct, uncontradicted testimony of J.D., Janice and Eliza, and that a conveyance to avoid potential creditors, who never press claims, will not justify application of the unclean hands rule, and that J.D. is entitled to the property, and his son Mark should

have reconveyed it because he was a constructive trustee.

Having resolved that J.D. was the equitable owner, we must determine whether the Baileys were purchasers without notice.

▇ Our West Virginia law contains the following syllabus points about purchasers with or without notice:

1. Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice.

2. A party is not entitled to protection as a bona fide purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests.

3. That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser.

4. If one has knowledge or information of facts sufficient to put a prudent man on inquiry, as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to prosecute the same, and to ascertain the extent of such prior right; and, if he wholly neglects to make inquiry, or, having begun it, fails to prosecute it in reasonable manner, the law will charge him with knowledge of all facts that such inquiry would have afforded. Syllabus Points 1, 2, 3 and 4, *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.*, 63 W.Va. 685, 60 S.E. 890 (1908).

A purchaser of real estate, contracting with a claimant not in possession, is put on inquiry by the fact that another is in possession of the property; and if he takes a conveyance from such claimant, he is charged in favor of the person so in

possession with all the information such inquiry would have disclosed if diligently pursued. (Citation omitted.) Syllabus Point 6, *Johnston v. Terry*, 128 W.Va. 94, 36 S.E.2d 489 (1945).

The defense of innocent purchaser is not available as a defense against one in actual possession holding under a prior equitable title, from the same vendor. The law imputes to such subsequent purchaser knowledge of all the rights which an inquiry of the purchaser in possession or those holding under him might disclose. Syllabus Point 4, *Mills v. McLanahan*, 70 W.Va. 288, 73 S.E. 927 (1912).

The law imputes to a purchaser of real estate, or an interest in real estate, all information which would be conveyed to him by an actual view of the premises. Syllabus Point 6, *Heck v. Morgan*, 88 W.Va. 102, 106 S.E. 413 (1921).

One who claims the protection of a court of equity as a bona fide purchaser must show that he had acquired the legal title before notice or knowledge of facts equivalent to notice. Syllabus Point 4, *Clark v. Lambert*, 55 W.Va. 512, 47 S.E. 312 (1904).

The fact that a subsequent purchaser had notice of a prior undocketed judgment may be inferred from circumstances, as well as proved by direct evidence. Syllabus, *Farley v. Bateman*, 40 W.Va. 540, 22 S.E. 72 (1895).

■ Mary Jane and Nelson Bailey testified that they had Mark's deed researched and found him to have good title. But, they were neighbors of J.D. and Mary Jane knew her uncle and his family had lived on that property for as long as she could remember. The Baileys were, at the least, required to inquire further. There is no love lost between these parties, but even if they were strangers, they would have had a duty to inquire. In the absence of inquiry, they lose their good faith status.

We reverse the circuit court's judgment because it wrongly applied the law to these facts. Mark could sell no more than he had—legal title as constructive trustee for his father. Because the Baileys did not meet the criteria of good faith purchasers

without notice, they are not entitled to evict Banther or recover damages.

Reversed.

McGRAW, Chief Justice, dissenting:

Without question, the transfer of legal title from the grandfather to his seven year old grandson in this case was made to avoid the appellant's potential creditors. In this respect, West Virginia Code § 40-1-1 (1982 Replacement Vol.) provides:

Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal ... with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives, or assigns be void....

The fact that the property in question did not technically pass through the hands of the appellant is irrelevant. In Syllabus Points 1 and 2 of *Lockhard & Ireland v. Beckley*, 10 W.Va. 87 (1877), this Court stated:

Where a husband or father purchases land in the name of a wife or child, or in his own name, and in either case procures a conveyance to be made to the wife or child, there is no resulting trust for the husband or father, as in the case of a purchase by one and a conveyance to a stranger.

But such a deed, if made with intent to hinder, delay, or defraud the creditors of the party so purchasing, may, at the suit of such creditors, be impeached, being within the statute against fraudulent conveyances.

*See also Rogers v. Verlander*, 30 W.Va. 619, 5 S.E. 847 (1888). Had the transfer in this case been challenged by the appellant's creditors, it could have been set aside under this statute.

Despite the ability of the appellant's creditors to void the conveyance in question, as this Court stated in *Kanawha Valley Bank v. Wilson*, 25 W.Va. 242, 260 (1884), "As between the fraudulent grantor and grantee the deed is valid and binding, and the law leaves them where they have

placed themselves, and will neither aid such grantor to regain his property nor such grantee to reclaim his purchase-money." *See also* Syl. pt. 1, *Thornburg v. Bowen,* 37 W.Va. 538, 16 S.E. 825 (1893); Syl. pt. 1, *Love v. Tinsley,* 32 W.Va. 25, 9 S.E. 44 (1889); Syl. pt. 7, *Duncan v. Custard,* 24 W.Va. 730 (1884); Syl. pt. 1, *Gibbs v. Logan,* 22 W.Va. 208 (1883); Syl. pt. 3, *Murdock v. Welles,* 9 W.Va. 552 (1876).

The policy against aiding a debtor seeking shelter from his creditors behind a sham conveyance is even stronger where, as in this case, an innocent seven year old is made, in effect, an unwilling accomplice. Even where the grantor and the grantee are knowing partners in the attempted avoidance of the grantor's creditors, this Court has traditionally refrained from assisting either party. As this Court stated in Syllabus Point 4 of *Edgell v. Smith,* 50 W.Va. 349, 40 S.E. 402 (1901):

A suit in equity cannot be maintained to cancel a deed made to hinder, delay or defraud creditors, though grantor and grantee are equally guilty, and equity will take no step to help either, but will leave them where they have placed themselves under the maxim, *"In pari delicto potior est conditio defendentis."*

The majority in this case not only ignores this ancient maxim by assisting the appellant despite his attempt to defraud his potential creditors, it punishes his son, who was without fault at the time of the transfer, because of his subsequent behavior upon reaching majority. Each of the cases cited by the majority for the proposition that a different rule obtains when it turns out that supposed claims were invalid, unproved, or illusory share one distinctive characteristic which is nonexistent in the present action: the grantee in each case agreed to reconvey the property at the time of the conveyance, usually upon the happening of a subsequent event. *See Wilcoxon v. Carrier,* 132 W.Va. 637, 53 S.E.2d 620 (1949) (daughter agreed to reconvey property to parent furnishing purchase money); *Hall v. Linkenauger,* 105 W.Va. 385, 142 S.E. 845 (1928) (daughter agreed to reconvey property to her mother upon request); *Thomas v. Anderson,* 76 W.Va.

496, 85 S.E. 657 (1915) (sister agreed to reconvey property to sister upon disposition of claim against grantor/sister); *Criss v. Criss,* 65 W.Va. 683, 64 S.E. 905 (1909) (son agreed to reconvey property to mother upon disposition of claims against mother). It also appears that the grantee in each of these cases had reached majority at the time of the transfer. There is no evidence in the present case that the grantor's grandson, who was seven years old, agreed to convey the property in question to his father under any circumstances. Furthermore, even if such promise had been made by this seven year old, its enforceability would be questionable. *See State ex rel. Myers v. Hodge,* 129 W.Va. 820, 42 S.E.2d 23 (1947); *Andrews v. Floyd,* 114 W.Va. 96, 170 S.E. 897 (1933).

Related to the majority's inappropriate application of the illusory creditor exception is its imposition of a constructive trust upon an innocent seven year old. Recently, in *Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981), this Court stated:

The requisites of a constructive trust are delineated in 5 *Scott on Trusts,* § 404.2 as follows:

"A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it."

Similarly, in *St. Clair v. St. Clair,* 166 W.Va. 173, 273 S.E.2d 352, 355 (1980), this Court stated, "To invoke the law of restitution or unjust enrichment to impose a constructive trust upon property of another, it is necessary that it be shown that one party has been unjustly enriched. *See, Annon v. Lucas,* 155 W.Va. 368, 185 S.E.2d

343 (1971); 1 G. Palmer, *The Law of Restitution* §§ 1.1, 1.4, 1.7 (1978); 5 *Scott on Trusts* § 404.2 (1967)."

Perhaps the reason that the majority opinion is barren of any reference to unjust enrichment, an essential precondition to the imposition of a constructive trust, is simply because, in fact, there was none. There was no fraud, no duress, no undue influence, no mistake, no breach of fiduciary duty, and no wrongful disposition of another's property by the grantee in this case. Therefore, there could be no unjust enrichment; enrichment perhaps, but not unjust enrichment. Undoubtedly, as Shakespeare's Lear proclaimed, "How sharper than a serpent's tooth it is to have a thankless child!" Shakespeare, King Lear, Act. I, Scene 1. Yet, courts cannot be moved by such ingratitude if the result is to ignore well established rules of law. Accordingly, I must respectfully dissent.